Argued December 3, 1962, reargued May 3, reversed and remanded
June 19, petition for modification denied July 15, 1963

# PERKINS *v.* STANDARD OIL COMPANY OF CALIFORNIA ET AL

383 P. 2d 107
383 P. 2d 1002

*Roger Tilbury,* Portland, argued the cause and filed the brief for appellant.

*James H. Clarke,* Portland, argued the cause for respondent Standard Oil Company of California. With him on the brief were Koerner, Young, McColloch & Dezendorf and Clarence J. Young and Wayne Hilliard, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, GOODWIN, DENECKE and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Clyde Perkins, from a judgment which the Circuit Court entered in favor of the defendants, four in number. The identity and circumstances of three of the defendants is immaterial upon this appeal; therefore, when we use the term "defendant" we will refer to the only defendant-respondent which is concerned with the appeal: Standard Oil Company of California.

The challenged judgment dismissed the Fifth Amended Complaint. The initial complaint was filed March 8, 1960. The Fifth Amended Complaint, that is the one that is now under attack, was filed January 8, 1962. It alleged that on April 6, 1953, the plaintiff who since 1945 had been a jobber of Standard's products in an area specified in the pleading signed a renewal contract with Standard which reappointed him jobber in the area. It further alleged that in violation of an implied condition of the contract Standard solicited directly the plaintiff's principal customer, Truax Oil Company. The words of the averment are "directly solicited and procured Truax Oil Inc., (Jess Truax) as its direct customer without the consent of plaintiff thereby eliminating plaintiff as a jobber from this account which was his largest single distributor. Plaintiff would have sold said products to Truax Oil, Inc. (Jess Truax) except for Standard's appropriation of Truax Oil Inc. (Jess Truax) as a direct customer."

A second cause of action appeared for the first time when, on September 14, 1961, the plaintiff filed his Fourth Amended Complaint. We turn to it as it ap-

pears in the Fifth Amended Complaint. It was based upon an alleged promise made by Standard to plaintiff subsequent to its appropriation of Truax Oil Company that it would replace for a consideration the gallonage which plaintiff had lost as a result of a cessation of his dealings with Truax. The Circuit Court struck both causes of action, dismissed the complaint and awarded judgment to the defendant. The plaintiff attacks those rulings as erroneous.

The motion to strike which was sustained reads as follows:

"Defendant * * * moves the court for an order striking the first alleged cause of action from plaintiff's fifth amended complaint. The same is sham and frivolous in that it offers no material allegations not contained in, and it realleges, without material change or alteration, the first cause of action alleged in plaintiff's third amended complaint in respect to which this court on August 17, 1961 entered an order sustaining this defendant's demurrer to plaintiff's third amended complaint. (Bliss v. Southern Pacific Company, 212 Or 634 at 653, 321 P2d 324) (Plaintiff's fourth amended complaint to which this same objection was made was disposed of by an order dated January 4, 1962 allowing Standard's alternative objection to that complaint based on plaintiff's failure to state his causes of action separately.)

"Defendant Standard also moves the court for an order striking the second alleged cause of action from plaintiff's fifth amended complaint upon the ground that it constitutes an entirely new, additional and substituted cause of action, namely an alleged agreement to replace the Truax gallonage, which new, additional and substituted cause of action is interposed for the first time two and one-half years after the original complaint was filed and is not in any way germane to the controversy previously sought to be litigated. (Talbot v. Gar-

retson (1897) 31 Or 256 at 265, 29 Pac 978; Ross v. Robinson (1944) 174 Or 25 at 43, 147 P2d 204)."

The contract with which we are concerned was signed April 6, 1953. It authorized the plaintiff to sell without Standard's written consent "on a non-exclusive basis" the products which Standard consigned to him but only to service stations or consuming accounts. Standard's written consent was required before the plaintiff could sell to any other account. The plaintiff promised in the contract to use his "best efforts to promote the sale of products consigned hereunder" and to sell a specified minimum amount during each year. The contract provided that title and risk of loss should remain with Standard. The plaintiff further agreed to account to Standard for the proceeds of all sales and to look to his commission as his sole compensation. Standard reserved "the right to select its customers." A provision of the contract acknowledged that the "Consignee (plaintiff) is engaged in an independent business and nothing herein shall be construed as granting to Standard any right to control Consignee with respect to his conduct of said business." The contract required the plaintiff to keep complete records of sales and the proceeds therefrom; and to deliver on notice statements and accounts. Standard was given a right to inspect and measure the stocks of the plaintiff on any business day. The plaintiff was required to hold all proceeds of sales made by him "as trustee" for Standard until the proceeds were paid to it. At the inception of the contract the plaintiff was required to deliver to Standard a complete list of the names and addresses of all his distributors and submit to it the names of any new potential distributors. The plaintiff was required at his own expense to secure and maintain insurance for the protection

of Standard and to secure Workmen's Compensation under our state law for the benefit of his employees. Accompanying the contract that we have just summarized was a letter which read:

"Please refer to the consignment agreement dated April 1, 1953, entered into simultaneously herewith, covering consignment of petroleum products for distribution by you in the area more particularly set forth therein * * *. Pursuant to the provisions of said paragraphs 3 and 9, we hereby approve the following accounts to whom you are currently making deliveries."

Listed at that point were the distributors to whom Standard authorized the plaintiff to continue to sell its products; among them was the Truax Oil Company. We assume that the part of Paragraph 3 which the words just quoted deemed material were these: "on a nonexclusive basis." We also assume that the following words found in Paragraph 9 are deemed by the quotation material: "Standard reserves the right to select its customers."

Truax was located in the Albany-Corvallis territory which was a part of the larger area assigned by the contract to plaintiff. The latter had been the sole distributor of petroleum products from which the Truax Oil Company had made purchases for many years. A contract which had initially been signed between the plaintiff and Truax in 1945 was renewed five years later and was in effect when plaintiff and Standard attached to their contract the paper from which we just quoted. About the time the contract between plaintiff and Truax expired in 1954 Standard and Truax bypassed the plaintiff and began negotiating with one another directly. Their negotiations culminated in the appropriation by Standard of Truax

as a direct customer to the exclusion of plaintiff. The plaintiff alleged that Standard's action in so doing constituted a breach of its contract with the plaintiff; it is that purported breach upon which the plaintiff depends as the basis of this case.

The first assignment of error charges:

"The Court erred in sustaining a motion to strike and demurrer to the first cause of action on the asserted grounds that it did not set forth a cause of action."

In support of its first cause of action the plaintiff claims that the contract by its very nature contains an implied condition that Standard would not solicit business directly from his (plaintiff's) customers. Standard protests that such an implied condition would be contrary to the express terms of the contract since the latter (1) provides that the plaintiff was authorized to sell Standard's products only "on a non-exclusive basis" and (2) reserved to Standard the "right to select its own customers." Plaintiff proposes a more restricted interpretation of the terms of the contract that we just took from Standard's quotation. He concedes that the contract reserved to Standard the right to sell to any new accounts which it found, and to accept or reject any new accounts which he (the plaintiff) might obtain, but he insists that it does not permit Standard to solicit accounts which it had approved as his customers. It will be recalled that April 6, 1953, when the plaintiff and Standard signed the renewal contract they attached to it the document of which we have taken notice and which said:

"Please refer to the consignment agreement * * * We hereby approve the following accounts to whom you are currently making deliveries."

There Standard entered the name of the Truax Oil Company.

■■ ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting."

This court has made the observation that in determining the intent of the parties to an instrument we must look to the entire paper rather than to isolated portions thereof. *McCreight v. Girardo*, 205 Or 223, 280 P2d 408, 287 P2d 414. We take the following from Williston on Contracts, Revised Edition, § 1293, page 3684:

"* * * Generally on a fair interpretation of a contract where the liability of one party to a contract is subject to a condition, express or implied in fact, which cannot happen without his cooperation, even though he has not in terms agreed that the condition shall happen, he will be held to have given impliedly a promise of such cooperation, but this is not always the case. A contract by which P promises that A shall be his exclusive agent in Liverpool may contain no implication that P will continue business in Liverpool. Of such questions it has been said: 'Precedent can throw but little light on the sound interpretation of such contracts, especially as to implying unexpressed obligations; each has its own individuality, its own background and surrounding circumstances. Words are only symbols, and at times, even in the most formal agreement, but elliptical expressions of the mutual understanding; the underlying mutual intent, sought by both parties to be clothed in the language used, must be ascertained; text, context, and extrinsic circumstances, including prior negotiations and relations, may be considered to enable the court

to view that matter from the standpoint of the parties at the time of making the contract.' "

The course of conduct pursued by parties in their performance of a contract, especially in a situation such as this where performance covered a course of years and involved extensive efforts, is frequently a reliable exponent of its meaning. In order to discover the correct interpretation of the contract, we will follow the rules just mentioned.

■ A reading of this contract reveals the following facts and conclusions to be drawn from them. In order to be successful in his business and to comply with the terms of his contract the plaintiff was obliged to make substantial investments in storage facilities, delivery trucks and other equipment. He was also obliged to hire employees. He was required to use his "best efforts" to promote the sale of Standard's products. Only if he sold Standard's products exclusively could it be said that he was using his best efforts to promote their sale. It is clear, then, that the contract limited his dealership to Standard products. Plaintiff was also required to sell a minimum quantity of other designated Standard petroleum products. If he at any time failed to sell the minimum quantity, Standard was at liberty to terminate its contract with him. Plaintiff's compensation was based exclusively on the sales he made to customers which he secured through his own efforts. No compensation was available for the plaintiff if he obtained customers for Standard who bought directly from it. Nor does the contract obligate Standard to compensate him for sales made directly by Standard to plaintiff's customers. Yet, it reserves to Standard the right to exercise a strict surveillance over a substantial segment of plaintiff's busi-

ness. In the exercise of this surveillance Standard had access to the names of a large number of the plaintiff's customers and the amounts that the plaintiff sold to them.

■ The foregoing elements of the contract between plaintiff and Standard convince us that a condition must be implied that Standard would not solicit customers which had been obtained through plaintiff's efforts. The interpretation of the contract for which Standard contends would leave plaintiff and others in a position similar to his completely at the mercy of Standard. In the words of Justice Cardozo in *Moran v. Standard Oil of New York,* 211 NY 187, 105 NE 217 (1914):

> "* * * We cannot accept that construction of its meaning. An intention to make so one-sided an agreement is not readily to be inferred. * * *"

And from the case of *Wood v. Lucy, Lady Duff-Gordon,* 222 NY 88, 118 NE 214 (1917), we quote:

> "We are not to suppose that one party was to be placed at the mercy of the other. * * *
> "* * * Without an implied promise, the transaction cannot have any business 'efficacy, as both parties must have intended that at all events it should have.' * * *"

■ 3 Corbin on Contracts, 278, contains an excellent discussion of the rule. It states it in the following words:

> "In every contract there is an implied covenant that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists a covenant of good faith and fair dealing."

See, also, 3 Corbin, supra, at 349-352 and cases there noted.

The implication of a condition finds support in many circumstances. We have alluded to only a few. Plaintiff's only source of return on his substantial investments in the business was the sales he made to his customers. If Standard was at liberty to solicit as direct customers, as it contends, "Truax or anyone else," plaintiff was in a state of economic servility; we do not believe that the parties intended such a result at the time the contract was signed.

Standard argues that the provisions that plaintiff could sell only "on a nonexclusive basis" and that Standard had the "right to select its own customers" conflict with a condition which would limit its liberty to appropriate the customers of its jobbers. Perhaps Standard's position would be tenable if the two clauses upon which it depends stood alone. But we have noticed that the instrument must be construed in its entirety. From the considerations which have gone before we must conclude that Standard was limited in its selection of customers to those which were not already customers of plaintiff. This conclusion finds support in the language used by Standard itself to approve the Truax account, among others, which plaintiff was servicing at the time the contract between Standard and himself was entered into. We have quoted the letter directed to the plaintiff by Standard which is attached to the contract and which recognized Truax as the plaintiff's customer.

The contract before us is obviously a form contract prepared by Standard. It is a contract of "adhesion" in the sense that it is a take-it-or-leave-it whole. Such contracts are regarded by some authorities as anachronistic or inconsistent with real freedom of con-

tract. At least they should be construed with an awareness of the inequality of the bargainers. See, e.g., Kessler, Contracts of Adhesion—Some Thoughts about Freedom of Contract, 43 Columbia L Rev 629 (1943). There is nothing novel about an implied condition that Standard will not negotiate with Perkins' customers during the term of any contract between Perkins and his customer, even though Standard has reserved the right to compete in the territory. Competition in the territory must be presumed to mean competition for uncommitted accounts. See *J. C. Millet Co. v. Distillers Distributing Corp.*, 258 F2d 139 (9th Cir 1959).

■ We do not deem it of consequence that the contract which bound the plaintiff and Truax had expired at the time Standard and Truax negotiated their agreement. The complaint alleged that plaintiff had serviced the Truax account for some years prior to the alleged breach, and that he would have continued to do so but for Standard's interference. The third amended complaint, to which defendant demurred, contained these same allegations. Each of these facts must therefore be construed as admitted by Standard. *State ex rel Venn v. Reid*, 207 Or 617, 298 P2d 990 (1956). Under those conditions we must conclude that Truax was a customer of plaintiff regardless of the nonexistence of a written contract between them at the precise moment that Standard moved in.

We have shown that implied in the contract between Standard and the plaintiff was a condition that Standard would not solicit as direct customers accounts which had been obtained through plaintiff's efforts. It remains to be seen whether the complaint is valid as to the first cause of action set forth therein.

The purpose of pleadings was described in *Ross v. Robinson*, 174 Or 25, 147 P2d 204 (1944) as follows:

"* * * The principal function of the pleadings is to enable litigants to bring their controversies to trial on the merits, and, generally speaking, the rules concerning pleadings should not be permitted to defeat a party's right to a trial except when to do otherwise would be unjust to his adversary or violate some express command of the statute. We have long since left behind us the day when 'the fundamental principles of right and justice which courts were created to uphold and enforce were esteemed of minor importance compared to the quibbles, refinements, and technicalities of special pleading,' and the courts 'adopted so many subtle, artificial, and technical rules governing the statement of actions and defenses * * * that in many cases the whole contention was whether the rules had been observed, and the merits of the case were never reached, and frequently never thought of.' * * *"

And from *Parker v. Faust*, 222 Or 526, 353 P2d 550 (1960), we quote:

"* * * We think that it is important to observe the rules of pleading to the end that issues may be framed in a clear and orderly way. But we do not believe that pleadings should be held defective merely because they do not artfully express the pleader's cause of action. * * *"

■ The purpose of requiring an exchange of pleadings is not to produce perfection in the statement of the issue but only to bring forth into the light the points that are in dispute. When those points are sufficiently revealed so that the opponent is apprized of what he must meet and the trial judge is given sufficient information so that he can rule advisedly during the progress of the trial, the pleadings have performed their function.

The complaint alleges that Standard had entered into a contract with plaintiff, and that the plaintiff had at all times abided by its terms. Implicit in that contract which is attached to the complaint and incorporated therein is a condition that Standard will refrain from soliciting as its direct customers accounts which were obtained through the plaintiff's efforts. The complaint alleges that Standard solicited and procured Truax Oil as its direct customer. It alleges that Truax had for some years prior to that time been plaintiff's customer and that but for Standard's interference Truax would have continued to deal with plaintiff. It alleges that this action by Standard constituted a breach of its contract with plaintiff. It further alleges that plaintiff notified Standard of this breach. The date of the contract is clear. There can be no misapprehension as to which contract it is claimed Standard breached. Although the language of the complaint is apparently not couched in the precise words which Standard would like to have seen, we are convinced that it understood the issue which was intended to be raised. We conclude that the pleading is not defective and that it is valid as to the first cause of action. It follows that the trial court's dismissal of the first cause of action was error.

Plaintiff's second assignment of error relates to the trial court's dismissal of his second cause of action. Prior to dismissal, the court sustained a motion by defendant to strike the second cause of action. The grounds for sustaining that motion are not clear from the record. Standard attacks the second cause of action on three grounds. First, it claims that plaintiff introduced that cause of action for the first time in his fourth amended complaint. Second, it urges that plaintiff abandoned his first cause of action and sub-

stituted an entirely new cause of action for the old. Third, it contends that the second cause of action is not germane to the controversy. On the basis of these contentions Standard concludes that plaintiff's second cause of action was properly stricken and dismissed.

Since all of these contentions are interrelated, we will consider them together. We quote the following from *Zimmerle v. Childers,* 67 Or 465, 136 P 349:

> "* * * It will be noticed that the amended complaint, allowed by the court below to be filed, omits a large amount of property described in the original complaint, and includes 17 tons of hay not named therein, and that the only property described in both the original and the amended complaint so filed is 24 hogs. * * *
>
> * * *
>
> "The provision * * * providing that the amendment of a pleading shall not substantially change the cause of action or the defense, does not apply to amendments made before trial. It applies only to amendments made during trial. The order of the court permitting the amended complaint to be filed was properly made."

*Merit v. Losey,* 194 Or 89, 240 P2d 933 (1952) said:

> "* * * The amendment was proper, and was in furtherance of justice, within the rule that amendments to pleadings before trial should be allowed with great liberality if they are essential to a fair trial on the merits. * * * Even if it substituted a new cause of action for the original one * * *, having been made before trial its allowance was within the discretion of the court. * * * If its allowance took plaintiff by surprise, he should have requested a continuance."

In this case the plaintiff does not use the second cause of action to substitute a new cause of action for

the old, although it is clear from the above quotation that this could have been permitted since the case had not yet come to trial. Nowhere is there a hint of abandonment of the first cause of action by plaintiff. The second cause of action merely added a new cause of action to the one which had been the subject of controversy since the original complaint was filed.

Nor can we agree that the second cause of action is not germane to the controversy. Both causes of action find their roots in the contract between Standard and plaintiff. The amount of recovery for both causes of action is the same. Recovery upon one of them would preclude recovery upon the other. The same parties are involved in both. Much of the evidence which will go to prove the first cause of action will also sustain the second. In light of these considerations, we must conclude, as we gather the trial court originally did, that the second cause of action is germane to the controversy.

The second cause of action alleges all of the facts contained in the allegations of the first cause of action. In addition it alleges that Standard agreed to replace the gallonage lost to plaintiff through the cessation of plaintiff's dealings with Truax and that Standard failed to abide by this agreement. It thus states a cause of action for the breach of the second contract. The trial court erred in sustaining the motion to strike and in dismissing the second cause of action.

We are aware of the fact that the complaint (fifth amended) does not express itself with the degree of clarity that can be achieved. Nor does it identify the pleader's theory with the certainty that is frequently obtained. When a complaint is tested by a demurrer, strict construction against the pleading is the rule. Adherence to that rule is not a fetish—it renders the

administration of justice through the medium of the trial judge more certain and prompt. Notwithstanding some lapses in the complaint from those demands, we conclude that the complaint states two causes of action for breach of contract. The challenged judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

LUSK, J., dissents.

### ON REQUEST FOR MODIFICATION

On respondent's request for modification of opinion.

Koerner, Young, McColloch & Dezendorf, Clarence J. Young, Wayne Hilliard, and James H. Clarke, Portland, for the request.

ROSSMAN, J.

The defendant-respondent has filed in this court a document entitled "Respondent's Request for Modification of Opinion" which, after stating "Standard does not seek a rehearing," quotes three excerpts which it takes from the part of our opinion that states the controversy and then declares that they are not supported by the record. We think that our opinion does not misstate the facts.

If the defendant's purpose in calling the three excerpts to our attention sprang from a fear that unless they are modified the passages may be misused by its adversary during the trial, we explain that which is

obvious—our opinion is not a set of findings of fact. It assumes the truth of the plaintiff's complaint and since the defendant has not submitted to the courts its version of the facts the statements made in our opinion cannot be attributed to the defendant except as a hypothesis for obtaining a ruling as to the law—not the facts.

The defendant's request for a modification is denied.