Argued February 5, affirmed as modified April 1,
petition for rehearing denied April 29, 1975

(Franchise Case)
*Not on Review*

ROSE CITY TRANSIT CO. ET AL, *Plaintiffs, v.*
CITY OF PORTLAND ET AL, *Defendants.*

(Pension Case)
*On Review*

CITY OF PORTLAND ET AL, *Plaintiffs, v.*
ROSE CITY TRANSIT CO. ET AL, *Defendants,*
CHARLES C. BOWEN; DIVISION NO. 757
AMALGAMATED TRANSIT UNION ET AL,
*Defendants.*
533 P2d 339

*Gerard K. Drummond,* of Rives, Bonyhadi & Drummond, Portland, argued the cause for plaintiffs City of Portland and Mass Transit District. With him on the briefs for Mass Transit District were Clifford B. Alterman of Kell, Alterman, Runstein & Thomas, Portland; and Dezendorf, Spears, Lubersky & Campbell, Portland. On the briefs for City of Portland were John Osburn, City Attorney, and Marian C. Rushing, Portland.

*Douglass M. Hamilton,* Portland, argued the cause

for defendants Rose City Transit Co., Landport Co., and Portland Transit Company. With him on the brief were R. R. Bullivant, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland; Allan Hart, and Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland; and Robert M. Kerr, Edwin J. Peterson, and Tooze, Kerr & Peterson, Portland.

*Don G. Swink,* Portland, argued the cause and filed a brief for defendant Division No. 757 Amalgamated Transit Union et al.

HOWELL, J.

This review concerns two declaratory judgment proceedings between the City of Portland and the Tri-County Metropolitan Transportation District of Oregon (Tri-Met) on the one hand and Rose City Transit Co. and Landport Co., Inc., on the other. In the first case, which has been denominated the franchise case (*Rose City Transit v. City of Portland,* 18 Or App 369, 378-400, 525 P2d 1325 (1974)), Rose City and Landport sought a decree declaring that the City had breached Rose City's mass transit franchise through improper termination of the franchise. In the second case, the pension case (*Rose City Transit v. City of Portland,* supra at 400-430), the City and Tri-Met sought a determination of the rights and liabilities of the various parties with regard to the continuation of certain employee pension and disability payments. In the pension case the union and a number of individual employees, both union and nonunion, were named as defendants.

In the pension case the Court of Appeals affirmed the trial court in holding that Rose City and Land-

port were liable to continue pension and disability payments to retired and eligible-to-retire union employees. The court also affirmed the trial court's holding that Rose City and Landport had no pension obligations to union and nonunion employees who were not retired or eligible to retire. The Court of Appeals reversed that portion of the trial court's decree which held that Rose City and Landport were liable for pension benefits for nonunion retired employees and nonunion employees eligible to retire.

We granted review in the pension case only. The review was limited to the issue of the liability of Rose City and Landport with regard to the pension rights of the nonunion employees who were retired or eligible to retire.

The complex background of this litigation is detailed in the opinion of the Court of Appeals. In 1936 the Portland Traction Company commenced operation of a mass transit system in Portland under a 20-year franchise. In 1946 Portland Traction and the union entered into a working agreement which included provisions for pensions for eligible employees. Disability provisions were added to the agreement in 1950. In 1956 the Portland Traction System was transferred to Rose City Transit Co. In 1958 Landport Co. was created as a wholly owned subsidiary of Rose City. All assets of Rose City were transferred to Landport and subsequently leased back to Rose City. The union pension agreement, initiated by Portland Traction, was assumed by Rose City and remained in force, with certain changes and increases in benefits, until 1969, when the City began operation of the mass transit system pursuant to its termination of Rose City's franchise in 1968. At all times Landport, Rose

City, and Portland Traction were wholly owned subsidiaries of Portland Transit Company and will be referred to as "the companies."

Commencing in 1946, Portland Traction, and later Rose City, began a consistent policy of providing pension and disability payments to nonunion employees. As stipulated by the parties:

"During the period of April 1, 1946, through November 30, 1969, all employees not members of the Transit Union who had the age and service requirements then applicable to Transit Union members who retired after service with Portland Traction and Rose City, received pension and/or disability payments at least equal to those paid to retired employees who were members of the Transit Union."

These payments were made pursuant to resolutions by the board of directors.

As noted above, the trial court held, and the Court of Appeals agreed, that the companies were liable for pension payments to union employees who had retired or were eligible to retire and met the eligibility requirements of the union contract. *Rose City Transit v. City of Portland,* supra at 410-417. However, the Court of Appeals held that the trial court erred in finding that the companies were also liable for pension payments to nonunion employees who were retired or eligible to retire. *Rose City Transit v. City of Portland,* supra at 417-420. The Court of Appeals held that there was insufficient evidence that a unilateral contract had been created between the companies and the nonunion employees.

■ This court has held that the adoption of a pension plan is an offer for a unilateral contract. In

*Taylor v. Mult. Dep. Sher. Ret. Bd.,* 265 Or 445, 450, 510 P2d 339 (1973), we stated:

> "Oregon has joined the ranks of those rejecting the gratuity theory of pensions and has held that contractual rights to a pension can be created between the employee and the employer."

Thus an employee pension or disability plan may be viewed as "an offer to the employee which may be accepted by the employee's continued employment, and such employment constitutes the underlying consideration for the promise." *McHorse v. Portland General Electric,* 268 Or 323, 331, 521 P2d 315 (1974).

■ For an employer to become liable under a pension plan, it must be shown (1) that the employer has adopted a plan to pay retirement benefits, (2) the employee knows of the plan, and (3) the employee is eligible for benefits under the plan:

> "* * * [W]here the employer has a fixed pension plan and the employee knows of it and continues in the employment in the honest belief that he will be the recipient of such plan, the employee may enforce his right to a pension * * *." *West v. Hunt Foods, Inc.,* 101 Cal App 2d 597, 603, 225 P2d 978 (1951).

*See Taylor v. Mult. Dep. Sher. Ret. Bd.,* supra; *McHorse v. Portland General Electric,* supra; *Jacoby v. Grays Harbor Chair & Mfg.,* 77 Wash 2d 911, 468 P2d 666 (1970); *Parsley v. Wyoming Automotive Co.,* 395 P2d 291 (Wyo 1964). *See also* Annot., 42 ALR2d 461 (1955); Annot., 52 ALR2d 437 (1957).

In the instant case there is no controversy with regard to the eligibility of the nonunion retired employees and the nonunion employees eligible to retire.

■ We also find that the companies have adopted a "plan" to pay retirement benefits to the concerned

nonunion employees. As noted above, from 1946 the companies, by resolution, paid pension and/or disability payments at least equal to the union benefits to *every* nonunion employee who met the age and service requirements applicable to the union. Thus, the companies established a custom of over 22 years of paying pension benefits to nonunion employees. This evidence should be contrasted with that presented in *West v. Hunt Foods, Inc.,* supra. There, the California court held that it was incumbent upon the plaintiff to prove the existence of an established pension plan. Evidence that the defendant had paid some benefits to only six of several hundred persons employed over a period of 25 years fell "far short of showing that the employer had a fixed plan for retiring employees." 101 Cal App 2d at 603. In the instant case, on the other hand, the evidence clearly shows that the companies adopted a plan for nonunion employees to provide benefits at least equal to those received by union employees.

■ A more difficult problem is presented with regard to whether the employees knew of the plan to pay pensions or disability benefits. No eligible nonunion employees testified on this point. One nonunion employee testified that he was aware of the plan and knew of no employees who had not received benefits under the plan. However, at the time of his testimony he was in a high management position and not among the group of employees eligible for benefits under the plan. His testimony does not indicate whether he gained his knowledge prior to assuming his management position.

We feel that the above evidence is sufficient to support the conclusion that the nonunion employees had knowledge of the plan. In *Hunter v. Sparling,*

87 Cal App 2d 711, 197 P2d 807 (1948), the plaintiff had worked for a California bank from 1892 to 1941. Around 1918 an employee of the bank retired and the plaintiff learned that the employee had received retirement benefits. Subsequently, other employees retired and plaintiff learned that they also received benefits. The court held that, although plaintiff did not become aware of the details of the plan until shortly before retirement, his knowledge of the plan was sufficient:

> "The fact that the precise terms of the formula were not known to plaintiff is immaterial as long as such terms were capable of ascertainment by the conduct of the parties or otherwise." 87 Cal App 2d at 725.

In the instant case the parties have stipulated that every nonunion employee from 1946 to 1969, a period of over 22 years, received a pension upon retirement. Pension plans, disability benefits, and health insurance are extremely important today to all workers, whether in the management hierarchy or at the union level. In fact, because of taxes, such benefits could become more important than salaries or salary increases. It is inconceivable to us that a nonunion employee working for a company that has consistently granted pensions to every other coworker for a period of 22 years would not know of the plan. Certainly such an inference is permissible from all the facts in this case, and the conclusion of the trial court was to that effect.

We believe that the evidence in this case supports the conclusion that the nonunion employees knew of the plan and are therefore entitled to benefits from Rose City and Landport.

Affirmed as modified.