Argued and submitted February 8, affirmed April 19, 1983

## STATE ex rel ROBERTS,
*Petitioner on Review,*

*v.*

## PUBLIC FINANCE CO.,
*Respondent on Review.*

(TC 16-81-03230, CA A21878, SC 28993)

662 P2d 330

William F. Gary, Solicitor General, Salem, filed the briefs and argued the cause for petitioner on review. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and Richard David Wasserman, Assistant Attorney General, Salem.

Jonathan M. Hoffman, Portland, filed the brief and argued the cause for respondent on review. With him on the brief was Martin, Bischoff, Templeton, Biggs & Ericsson, Portland.

Larry K. Amburgey, Portland, filed a brief amici curiae for Food Employers, Inc., Northwest Packers Industrial Association, Timber Operators Council, Inc., Champion International Corporation, Lamb-Weston, Inc., Payless Drugstores Northwest, Inc., Portland General Electric Company, Sprouse-Reitz Corporation and Trus Joist Corporation. With him on the brief were Amy Segal and Bullard, Korshoj, Smith & Jernstedt, P.C., Portland.

Before Lent, C.J., Peterson, Campbell, Roberts, Carson and Jones, Justices.

CAMPBELL, J.

Roberts, J. dissented and filed an opinion in which Lent, C. J. joined.

## CAMPBELL, J.

The state, acting through the Oregon Bureau of Labor and Industries, brought this action against Public Finance Company to collect vacation pay it alleges Public Finance owes to the state's assignor, Richard Hoglen. The employer denies owing any vacation pay because Hoglen was discharged before his anniverary date. The trial court granted summary judgment for the employer. The state appealed. The Court of Appeals affirmed. We also affirm.

Hoglen had been employed by Public Finance since November 24, 1961. His employment contract was terminable at will by either party. On November 21, 1980, Public Finance terminated Hoglen's employment because it sold the business. This was three days before Hoglen's anniversary date. Public Finance paid Hoglen his earned salary. However, it refused to pay him wages in lieu of any portion of the vacation that Hoglen contends he earned. Hoglen assigned his wage claim to the Bureau of Labor and Industries, which filed this complaint pursuant to ORS 652.310 to 652.405. The state also seeks the civil penalty provided by ORS 652.150 and costs and attorney fees.

The relevant portion of the employment contract reads as follows:

"557. *VACATION*

"557.1 *Eligibility* - Permanent full-time employees are eligible for vacation based on length of continuous service. Eligibility is contingent upon such service being performed in strict compliance with all Company rules and policies. Except at completion of the first six months of employment, vacation entitlement is established on the employee's anniversary date with the Company. Anniversary date means Month and Day employed.

"* * * * *

"544. *VACATION ENTITLEMENT ON TERMINATION*

"544.1 *Dismissal for Cause*

"544.11 No vacation pay.

"544.2 *Dismissal and Release*

"544.21 An employee who is released or dismissed for reason other than cause as explained in 543.11

with vacation time earned but not yet taken, will be paid for that time.

"544.3 *Resignation*

"544.31 If an employee resigns with vacation time earned but not yet taken, he/she will be paid for that time, provided proper notice of intent to resign is given as explained in 543.43."

Both parties moved for summary judgment. The trial court found that the requirement that an employee be employed on his anniversary date was a condition precedent to his entitlement to vacation for that year and granted the employer's motion for summary judgment.

■ ■ An employer is free to set the terms and conditions of the work and of the compensation and the employee may accept or reject those conditions. There is no question that this employment contract was terminable at will by either party at any time. Neither party claims that this contract is ambiguous, and we agree that it is unambiguous. The employment contract itself will control the employee's right to vacation. *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 557 P2d 1344 (1976).

■ We find that a fair reading of this contract reveals that if an employee is terminated before his anniversary date, even though his discharge is not "for cause," he has earned no vacation time for the year, and the employer does not need to pay wages in lieu of vacation time for the full year or on a pro rata basis. An employee is entitled to a paid vacation or wages in lieu of vacation only if he is employed on his anniversary. If the phrase "and an employee does not earn vacation on a pro rata basis" had been inserted into this contract, it would not change the contract in any respect.[1]

---

[1] Our interpretation of this contract is consistent with that found in some jurisdictions: *Moore v. Home Insurance Co.*, 601 F2d 1072 (9th Cir 1979); *Keneally v. Orgain*, 606 P2d 127 (Mont 1980); *Feola v. Valmont Industries, Inc.*, 208 Neb 527, 304 NW2d 377 (1981); *Briggs v. Electric Auto-Lite Co.*, 37 Wis 2d 275, 155 NW2d 32 (1967). Other jurisdictions have decided that compensation is earned on a pro rata basis, and must be paid when the relationship is terminated: *Local Union No. 186 v. Armour Co.*, 446 F2d 610 (6th Cir 1971); *American Security Life Ins. Co. v. Moore*, 37 Ala App 552, 72 So2d 132 (1954); *Sinnett v. Hie Food Products, Inc.*, 185 Neb 221, 174 NW2d 720 (1970). Some cases holding in this

This holding is consistent with *Rose City Transit v. City of Portland,* 18 Or App 369, 525 P2d 1325 (1974). In that case, the Court of Appeals found that when the business was sold, employees who had not met the requirements of a pension plan in terms of age and service requirements were not entitled to pension benefits on a pro rata basis. Those requirements were correctly interpreted as conditions precedent that must have been met before the employer was obligated to provide pension benefits. We modified this case on a separate issue and did not disturb this holding. *Rose City Transit v. City of Portland,* 271 Or 588, 533 P2d 339 (1975). We expressly approve it now.

The state relies heavily on *Thompson v. Burr,* 260 Or 329, 490 P2d 157 (1971). In *Thompson* the employment contract stated that if an employee worked thoroughout a calendar year, and was still employed on April 15, he would be eligible for a bonus based on the gross earnings of the previous calendar year. That employer terminated the employment of the worker on March 12. We held that the employee nevertheless was entitled to the bonus because he had earned it by his employment through the preceding calendar year. The requirement that he be employed on April 15 was not a condition precedent to earning the compensation, but rather a payment date. Also in *Thompson* there were allegations and findings that the employee was not terminated for bona fide business reasons. Our present case would be analogous to *Thompson* if Hoglen had been discharged after his anniversary date, and had not yet taken the vacation time he had earned by being employed on his anniversary date.

The state argues that the vacation plan is a unilateral employment contract which cannot be revoked after the offeree has begun performance. It contends that this is

fashion can be distinguished because: (1) there was no express language in the contract, *Haag v. Rogers,* 9 Ga App 650, 72 SE 46 (1911); (2) the termination was a wrongful discharge, *Coleman v. Graybar Electric Co.,* 195 F2d 374 (5th Cir 1952); (3) there are statutory requirements, *Suastez v. Plastic Dress-Up Co.,* 31 Cal3d 774, 647 P2d 122, 183 Cal Rptr 846 (1982); (4) the employee had actually become entitled to the compensation but had not yet received it at the time of the termination, *Lampley v. Celebrity Homes, Inc.,* 42 Colo App 359, 594 P2d 605 (1979). *See generally* DeGiuseppe, *Employment-at-will Rule,* 10 Fordham ULJ 1 (1981); *but see* Note, *Private Pension Plans,* 70 Harv L R 490, 497 (1957).

identical to the hypothetical situation in which A offers B $10 to cross the Brooklyn Bridge and attempts to revoke or actively renders his performance impossible when B is almost to the end of the bridge. It is correct that under general contract law this attempt at revocation would not be effective and A would be in breach of contract. This, however, is not the present case.

It is true that this plan offering vacation pay is somewhat like a unilateral contract, in that the employer would not have the power to alter the conditions or rescind the original offer in the middle of the year, if the employee remained on the job because of the original offer. However, as we said in *Walker v. American Optical Corp.*, 265 Or 327, 330, 509 P2d 439 (1973), concerning a unilateral contract for a bonus, it does not follow that just because this is a unilateral contract the employee automatically becomes entitled to the additional compensation by remaining employed for part of the contract period. There, as here, the employer's obligation to pay the compensation arises only on the occurrence of the condition precedent as described in the contract. In both cases, the condition precedent is the employee's employment on a certain named day.[2] The employee's rights only vest when he has satisfied all conditions precedent. *McHorse v. Portland General Electric Co.*, 268 Or 323, 331, 521 P2d 315 (1974).

The point that the state ignores is that the principal contract was a contract for employment at will, which was terminable by either party at any time for almost any reason.[3] The terms of this vacation contract are qualified by and subject to the terms of the employment contract as a whole. The vacation plan was a secondary contract which stated if and only if the employee were employed on his anniversary date, the employer then would have a duty to grant further compensation in the form of paid vacation.

---

[2] A similar situation concerned an employee's entitlement to pension benefits. In *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 510 P2d 339 (1973), we noted that the employer lost the power to revoke the offer when the employee accepted the plan, but also said she would be entitled to the benefits only if she continued to work for the requisite period. 265 Or at 454.

[3] We consider the entire agreement. *Perkins v. Standard Oil Co.*, 235 Or 7, 14, 383 P2d 107, 383 P2d 1002 (1963). We note that by clause 544.11 if an employee is dismissed for cause, he receives no vacation pay, even if it has been earned.

This duty only arises when the condition precedent is met. After the employee's anniversary date, the employer could not refuse to grant this compensation unless otherwise provided in the contract.[4]

The state, in its argument alleging a unilateral contract, is attempting to change this at will contract into a one year employment contract. This cannot be done.

Were there no express, unambiguous contract in the present case, the dissent's interpretation of the respective rights and duties would probably be correct. However, we are not free to ignore the contract.

Because the employment was at will, and either party could terminate it at any time, employment on an employee's anniversary date under this contract is a condition precedent to paid vacation time, and because the employee was not employed on his anniversary date, he is not entitled to wages in lieu of vacation time.

Because of our decision, the employer is necessarily not liable for penalties, attorney fees or costs.

**ROBERTS, J.,** dissenting.

I must dissent. In my opinion, the majority's glib dismissal of this worker's claim does a disservice not only to him, but also to the large number of similarly situated workers in this state.

The problem presented is probably not an uncommon one — how to treat accrued but unvested contract benefits[1] when an employee is terminated other than for cause. The majority opinion proceeds to analyze the issue with a straightforward and seductively simple syllogism:

---

[4] In this case, there was no allegation that the discharge was wrongful. If there were, this might change our decision, for an implied covenant of good faith and fair dealing bars an employer from terminating an at-will employee for the purpose of depriving the employee of benefits to which he would otherwise have become entitled. *Moore v. Home Insurance Co.,* 601 F2d 1072 (9th Cir 1979).

[1] Under the contract, Hoglen was to receive three weeks of paid vacation a year, "entitlement" to be established on his anniversary date. To denote his interest in those benefits which he may be said to have "earned" by part performance between anniversary dates, I will use the term "accrued but unvested." This is to be distinguished from vacation already "earned [and vested] but not yet taken" under contract sections 544.21 and 544.31. The ambiguity of the relevant contract sections is due in large part to their inconsistent and imprecise nomenclature.

1. The contract unambiguously provides that a year's performance by an employee is a "condition precedent" to any "entitlement" to the vacation benefit.

2. Plaintiff[2] did not fulfill the condition precedent because of his termination;

3. Because defendant's termination of plaintiff was privileged, plaintiff is not entitled to any of the vacation pay.

I do not quarrel, nor does plaintiff, with the stated premises.[3] Rather, the problem is whether the conclusion logically and legally follows from them. The majority's implicit holding, that an unfulfilled condition precedent is necessarily fatal to an employee's claim for accrued but unvested benefits under the contract where there is no "fault" on the employer's part, is expedient for their desired result. Such a holding, however, is not compelled and effectively shortcuts the indispensable further analysis of whether plaintiff's failure to perform fully, also without "fault," is legally excusable under the circumstances.

In my opinion, this case is controlled by *Thompson v. Burr*, 260 Or 329, 490 P2d 157 (1971). The plaintiff employee there had worked for defendant employer throughout 1968. With regard to the contested bonus, the

---

[2] For convenience, I use the term "plaintiff" to include Hoglen, the defendant's former employee whose contract rights are at issue here.

[3] There is substantial confusion as to the nature of the vacation pay clauses. The majority here, like the defendant, refers to them as establishing a "condition precedent" to defendant's obligation to provide the vacation benefit. Plaintiff, on the other hand, has steadfastly urged that the clauses create a unilateral contract. Unilateral contracts arise from offers which by their terms contemplate acceptance only by a specified performance. The offeree must fully complete performance *to* accept the offer, but his or her act of making a substantial step toward that performance generally prevents the offeror from revoking the offer. *See generally* Restatement (Second) of Contracts § 45 (1981).

There may be, as contended by defendant, a conceptual problem in analyzing this as a unilateral contract since the overall employment contract is one for an indefinite term and is terminable-at-will. However, any distinction, in my opinion, is more one of form than substance, at least with regard to the issue presented here. Whichever way it is analyzed, the essential inquiry is the same: whether the failure of the condition that plaintiff perform through to his anniversary date may be excused, so as to give plaintiff some recompense for his part performance, where the completed performance was obviated or rendered impossible because of the act of the defendant. I use the "condition precedent" analysis and language as more convenient for purposes here, though I concur in plaintiff's assertion that the clauses can be analyzed (with the same result) under unilateral contract principles.

employment contract provided that "if an employee is on the payroll as of April 1st of any year, then he will be considered for a bonus based on his wages earned in the previous calendar year," but that defendant "is under no obligation to make the payments unless we are actually employed by him on April 1st of any year." 260 Or at 331. Plaintiff was terminated without cause several days before April 1, 1969, and sued to recover his bonus. First we held that the bonus was not a "mere gratuity" freely revocable by defendant and then noted:

> "There is ample authority to the effect that where the payment of a bonus is a matter of contract (as in this case), rather than a gratuity, such an agreement by an employer to pay a bonus to an employee may not be defeated by the employer by discharging the employee shortly before he has completed his eligibility for the bonus unless the discharge was for 'good cause' and that if such an employee is discharged 'without good cause' he is still entitled to payment of the bonus even if the employer did not act in bad faith." 260 Or at 334-35 (footnote omitted).

We then upheld the award of the bonus to plaintiff notwithstanding the clear conditional language in the contract, plaintiff's failure to fulfill the condition, and the lack of any finding of bad faith on the part of the employer. 260 Or at 335.

The majority summarily dismisses *Thompson* as involving not a condition precedent but merely a "payment date." This distinction is specious; the case, in my opinion, is not significantly distinguishable. Both here and in *Thompson* the benefit at issue was not vested by the clear terms of the contract, the termination was privileged but without "cause," and there was no showing of bad faith by the employer. As in *Thompson,* the present plaintiff's untimely termination without cause should not defeat his interest in an unvested benefit. It is true that *Thompson* did not involve a *pro rata* compensation computation inasmuch as the bonus there had been fully "earned" and its vesting was merely delayed. That distinction does not mandate a different result here, however, since the analysis there is valid and applicable regardless of whether the benefit has been fully or only partially "earned."

The majority's treatment of *Rose City . Transit v. City of Portland,* 18 Or App 369, 525 P2d 1325 (1974), *aff'd*

*as modified upon limited review* 271 Or 588, 533 P2d 339 (1975) is incomplete. That case dealt with, in part, a determination of the employees' pension rights upon a transit district's take-over of a franchisee's operations. With regard to unvested pension rights (*i.e.,* where the particular employee had not fulfilled the conditions precedent to the pension), the trial court held that as between the former franchisee and the transit district the latter had to maintain the pension plan and could not obtain *pro rata* contribution from the former. 18 Or App at 405. The Court of Appeals affirmed this ruling (18 Or App at 420-23) and this court did not address the issue. Thus, *Rose City Transit* involved simply a dispute between past and present employers as to who was responsible for unvested pension rights of the continuing employees. The case did not decide whether workers' unvested rights were forfeited because of the take-over; it decided that the past employer had no obligation to pay to the present employer a *pro rata* share of pension benefits for employees who were not yet eligible to retire. Workers' entitlement to pension benefits was not challenged.

In addition to the *Thompson* precedent there are considerations not addressed by the majority which I feel compelled to raise.

As a preface, it is important to emphasize some facts about the parties' contractual relationship and the benefits at issue. First, it is undisputed that plaintiff's employment contract was for an indefinite term and that it was terminable-at-will by either party at any time. Plaintiff has not alleged that his termination was done in bad faith or for improper motive, nor that it was contrary to the law or any contractual provision. Hence, defendant was privileged to terminate plaintiff's employment and cannot be deemed in breach or at "fault" with regard to the dismissal. Likewise, defendant has made no argument that plaintiff was in any manner at "fault," *i.e.,* that his dismissal was for "cause."

Second, any rights plaintiff may have against defendant arising from the dismissal are governed, in the first instance, by the provisions of the parties' contract, to the extent they are applicable. It is important to note, for

construction purposes, that the contract was not a negotiated one; apparently it was a standard form, printed contract imposed upon plaintiff in a "take-it-or-leave-it" manner. Plaintiff has not suggested, however, that it was one of adhesion.

Third, there is no question but that the vacation pay benefit here at issue was part of the parties' *quid pro quo* for plaintiff's services. Plaintiff has an enforceable contractual right to the benefit provided he has complied with all the necessary contractual pre-conditions to it. In other words, the benefit at issue was not a mere gratuity benevolently bestowed by defendant which was freely revocable by it at any time.

Finally, assuming *arguendo* that each employee's full performance for a year (namely, anniversary date to anniversary date) is a condition precedent to his or her entitlement to the contractual vacation pay benefit for that year, it is clear that this condition is largely an arbitrary "timing device" without any direct relevance to the value of the employee's performance. Contrast the condition in this case with a typical one designed to ensure recognition and enjoyment by the obligor of the obligee's bargained-for performance under circumstances where a mere part performance has little or no value to the obligor. For example, a contract for the fabrication and delivery by a certain time of a dozen widgets may make the seller's complete performance a condition precedent to the buyer's obligation to pay because anything less than timely and complete performance would render the contract valueless to buyer. In this case, the "condition precedent" of the employee's employment on the anniversary date does not serve to ensure recognition and enjoyment by the employer of the value of the performance rendered; rather, it is merely an arbitrary and convenient way of computing when the employee should be entitled to the benefit. In short, plaintiff's part performance had value to defendant and, moreover, is easily and fairly susceptible to *pro rata* computation.

When a contract contains a condition which has not been fulfilled, such that the obligee is not entitled by the terms of the contract to the obligor's return performance, it is essential that a determination be made as to the

*reason* for the failure of the condition so as to resolve whether the obligee is entitled to any recompense for his or her part performance.

Neither party here objects to either of the following propositions: (1) That if an employee voluntarily quits or is fired for cause prior to his or her anniversary date, any rights to accrued but unvested vacation benefits are forfeited. This is true because the failure of the condition was the employee's "fault" and hence inexcusable. (2) That, on the other hand, if an employee is improperly terminated by an employer (either in breach of contract or violation of law) prior to his or her anniversary date, the employer cannot rely upon the failure of the condition to deny the employee the accrued benefits. That is, the failure of the condition would be the employer's "fault" and hence excusable. The problem here, of course, is that neither of these propositions apply inasmuch as the plaintiff's termination was not the "fault" of either party.

Although plaintiff's termination was not defendant's "fault," in a pejorative and legal sense, it certainly was a result which defendant alone brought about. Defendant was privileged to terminate plaintiff, but that does not prevent it from being responsible, in a causal sense, for the failure of the condition. Plaintiff has specifically alleged that he remained ready, willing, and able to complete the requisite performance for entitlement to the contested benefit and that only his termination by defendant prevented the condition's fulfillment. Since defendant has not argued otherwise, it cannot be contradicted that the *reason* for the failure of the condition was wholly the unilateral, albeit privileged, act of the defendant.

For the answer to whether this fact justifies an excusal of the condition, reference in the first instance must be made to the contract to see if any express terms therein are controlling. Section 557.1, quoted in full in the majority opinion, merely provides that "[e]ligibility [for vacation benefits] is contingent upon such service being performed in strict compliance with all Company rules and policies." And that "vacation entitlement is established on the employee's anniversary date * * *." Essentially, § 557.1 sets up two conditions to "entitlement" to the benefits: (1)

satisfactory performance (2) until the anniversary date. Plaintiff fulfilled the former but was prevented by defendant from fulfilling the latter. Other than setting up the timing condition, this section does not address the contingency of a failure of that condition.

Other contractual provisions specify that the employee is entitled to no benefits, vested or unvested, if dismissed for cause (§ 544.11), but he or she is entitled to benefits "earned but not yet taken" if termination is voluntary or without cause (§§ 544.21 and 544.31). Assuming *arguendo* that the term "earned" refers only to benefits the employee has in the past become "entitled" to under § 557.1, neither of these sections addresses the question of how to deal with benefits accrued but unvested under § 557.1 where the termination is without cause. There is no question but that the contract is silent on this point; there is no explicit provision mandating a particular treatment.

The majority nonetheless concludes that the contract is unambiguous as to this dispute. Finding the contract unambiguous the majority adopts defendant's view that whenever the contract contains an explicit condition a failure of the condition automatically results in a total forfeiture of plaintiff's interest. I strongly disagree. As noted, the contract's provisions neither explicitly mandate a forfeiture under these circumstances, nor provide for a *pro rata* scheme. Where the express terms of a contract are not determinative of a particular dispute between the parties, in that they are reasonably susceptible to the respective and conflicting interpretations of both parties, the well-established rule of construction is that the contract is to be "construed most strongly against the party which drew it." *Meskimen v. Larry Angell Salvage Co.*, 286 Or 87, 93, 592 P2d 1014 (1979). The premise underlying this rule is that where a pre-drafted contract has the potential to mislead, the drafter should bear any risk occasioned by the ambiguity since he or she was in the best position to avoid the problem by concise and artful drafting and is best able to rectify the problem for the future. Construing the contract against defendant, since plaintiff's interpretation is reasonable, plaintiff should prevail.[4]

---

[4] Given just the language of the contract clauses, I do not think that it would be unreasonable for defendant's employees to conclude (1) that they were

This result is further strengthened by an analysis of the other erroneous aspect of the majority's approach. The majority is unclear whether it concludes as a matter of fact that defendant's interpretation is correct, or that as a matter of law the failure of a condition precedent can only have the effect of a complete forfeiture under these circumstances. Approaching the case as purely one of contract law,[5] the question becomes whether the failure of a condition precedent is excusable where the failure is the result of an event brought about by the unilateral but "faultless" act of the obligor.

An obligee, as a general rule, must completely fulfill any contractual conditions to the obligor's return performance before he or she is entitled to any of such return performance. For example, if A contracts with B, without further qualification, to mow B's lawn for $5, A must complete the requisite performance to be entitled to the $5. Implicit in such a contract, however, is B's assurance that he will not do anything to hinder or prevent A's performance. Thus, although A's unilateral inability or refusal to fulfill the condition will generally discharge B's return obligation to pay (*see* Restatement (Second) of Contracts § 225 (1981)), A would be entitled to recompense where her failure to complete was precipitated by B's improper efforts to hinder or prevent her performance *(see id.,* at comment *b* and *c).* This is because it cannot generally be said, as between the parties, that A "assumes the risk"

---

"earning" vacation during the year at roughly a-day-a-month, (2) that it was subject only to delayed enjoyment until after their anniversary date, and (3) that these accrued and unvested benefits would not be lost so long as they satisfactorily performed, *i.e.,* did not quit or get fired for cause. Further, it was not unreasonable for them to assume that they would not lose their rights in such benefits if they were involuntarily terminated without cause, particularly since that would seem to leave these benefits wholly within the unilateral power of the defendant to deny.

This is not, of course, to dismiss defendant's interpretation as unreasonable. The point is simply that where the contract is susceptible of two or more reasonable interpretations, it should be construed against the party who drafted it, especially contracts of this ilk — standard-form unnegotiated employment contracts.

[5] The question of fact may have been resolvable by an examination of the intent of the parties. However, in this case neither side presented evidence of intent beyond the contract and both moved for summary judgment, arguing that there was no issue of fact and that they were entitled to judgment as a matter of law. *See* ORCP 47 C.

of an event which is directly and improperly caused by B and which obviates or prevents her completion of the condition. The answer is less clear, however, where B's act is privileged and done for a proper primary purpose, though it has the unavoidable same effect upon A's performance. Thus, B's unjustifiable eviction of A before she could finish the lawn-mowing task would excuse the condition, but B's sale of the property prior to the time of A's completion of the task presents a problem.

Whenever a condition to an obligor's return performance fails to occur because of some event which prevents or obviates it, the question is whether it can be said that the obligee assumed the risk of that event. Where the event was within the unilateral control of the obligor, it is only fair, as a rule of construction, *not* to imply such an assumption on the obligee's part unless the factual circumstances clearly manifest such an intent. The restatement states it this way:

> "In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." Restatement (Second) of Contracts § 227(1).

> "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless the occurrence was a material part of the agreed exchange." *Id.,* at § 229.

In my view, where (1) the obligee's fulfillment of the condition is "faultlessly" obviated or prevented by an act of the obligor, (2) the obligee did not clearly manifest an intention to assume the risk of the obligor's act, and (3) the obligee's part performance had an ascertainable value to the obligor (*e.g.,* the condition was merely an arbitrary timing device and did exist to ensure recognition and enjoyment of the obligee's performance by the obligor), the obligee should be entitled to some compensation for his or her part performance. Otherwise, the condition's failure would effect a disproportionate forfeiture irrespective of the value to the obligor of the obligee's part performance.

The majority seems to reason here that because the employment contract between plaintiff and defendant was for an indefinite term, terminable-at-will, that fact of itself sustains the conclusion that plaintiff assumed the risk of involuntary termination without cause at any time prior to his anniversary date. Just as the woman who contracted with B to mow his lawn for $5 "must" have realized that B "might" sell the house prior to her completion of the task, plaintiff here must have realized that defendant might do likewise. Recognition of the possibility of the risk, however, is not tantamount to assumption of it, at least in the absence of an indication that the obligee fully appreciated the nature and probability of the risk and the forfeiture consequences which would flow from it. If, for example, B specifically warned A that he was planning to sell the house and that she would be entitled to nothing if the sale went through before her completion of the task, her entering into performance notwithstanding this warning allows the inference that she assumed the risk of the event even though it was within B's unilateral control. Absent such a specific warning, however, A's presumed knowledge of the possibility of the event should not be construed as an assumption of the risk of it. Likewise, in my view, plaintiff's mere knowledge that he served at defendant's pleasure does not justify the conclusion that, with regard to the vacation benefit, he assumed the risk of total forfeiture in the event of an involuntary termination without cause.

The reason for this conclusion relates to what I noted earlier about construction of contracts against the drafter. Where one offers a contract containing a general condition in such a manner that the terms are not negotiated, or negotiable, the burden should be on the offeror to make clear the nature and effect of the condition. If the offeror intends that the failure of the condition will result in a total forfeiture of the other's part performance even where it is precipitated by the offeror's own unilateral act, *that* should be made unambiguous so that the other fully appreciates the risks to be assumed. Absent such an unambiguous agreement or circumstances manifesting a clear intent on both parties' part that the risk is being assumed by the offeree, the failure of the condition because of the unilateral act of the offeror should not effect a total forfeiture of the offeree's interest.

Concluding that the circumstances here do not as a matter of law justify a forfeiture on plaintiff's part raises the further issue on how he is to be recompensed for his part performance. On these facts the answer is easily arrived at. For the reasons stated above, *pro rata* compensation is certainly fair to both parties. Since neither party is at "fault" for the condition's failure and plaintiff's part performance presumably had a value to defendant in proportion to the duration of the year completed, it is fair to split the loss between them on that basis.[6]

I respectfully dissent.

Lent. C. J. joins in this dissent.

---

[6] The parties cite and discuss a number of cases from other jurisdictions addressing the issue presented. The results vary markedly based upon the facts of the termination, the nature of the benefit and the contract, and the extent to which a court is apt to find that a particular employee assumed the risk of the termination with regard to the contested benefit. Suffice it to say, most are distinguishable, and those which are not but which find for the employer are, for the reasons stated above, unpersuasive to me.