Argued April 13, reargued June 9, affirmed July 6, petition
for rehearing denied July 26, 1960

# MASSEY ᴇᴛ ᴀʟ *v.* OREGON-WASHINGTON
## PLYWOOD COMPANY
### 353 P. 2d 1039

*George J. Perkins,* Troutdale, argued the cause and submitted a brief for appellant.

*Gilbert Sussman,* Portland, argued the cause and submitted a brief for respondents.

Before McALLISTER, Chief Justice, and ROSSMAN,

WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is an action brought by the assignees of defendant's employees to recover $2,088.20, the aggregate of 139 claims for pay alleged to be due for July 4, 1954, a holiday, which fell within a contractual vacation period. The claims are based upon the provisions of a working agreement in effect in 1954 between the defendant and the Plywood and Veneer Workers Union, Local 9-427, of which plaintiff's assignors were members. We are called upon to interpret this contract. The contract provides that the vacation period is extended an additional day in the event that the vacation period contains a holiday. The issue on this appeal is whether the defendant's employees, eligible for a vacation, are entitled to pay for the additional day extended by the intervening holiday.

On April 30, 1954, defendant fixed the vacation period from 12 o'clock midnight, July 2, 1954, to 12 o'clock midnight, July 19, 1954. On June 19, 1954, the defendant's employees went on strike and remained out on strike until September 13, 1954. On June 28, 1954, the employees were paid for a two-week vacation period, but no payment was made for the additional day of the vacation period extended by the fact that the holiday on July 4 fell within it.

Plaintiff's complaint was filed on June 26, 1957. Defendant demurred to the complaint on the ground that the action was to recover premium pay and was barred by the one year period of limitation prescribed by ORS 12.120 (3). The demurrer was overruled. The case was tried without a jury. The appeal is from a

judgment for plaintiffs in the amount of $2,088.20, with interest at 6% from July 23, 1954.

The provisions of the working agreement which are involved in this controversy are as follows:

## "Article VII

"HOLIDAYS

"The following holidays shall be observed: Armistice Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, and New Year's Day; * * *.

* * * * *

"Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, and New Year's Day shall be recognized as paid holidays for qualified employees.

* * * * *

"Holiday pay shall be computed at the qualified employee's regular job rate of pay for his regular work schedule for the day so lost but not to exceed eight hours.

* * * * *

"An employee is eligible for holiday pay if he has at least 31-day seniority prior to the holiday and works the last regularly scheduled work day before and the first regularly scheduled work day after the 'paid holiday,' unless his absence (1) is due to occupational injury or occupational illness, or (2) is excused in writing by the Company."

* * * * *

## "Article VII-A

"VACATIONS

"All employees as defined in this agreement shall be granted one week or two weeks vacation with pay, each year beginning with 1941, subject to the following terms and conditions.

* * * * *

"4. The vacation shall be one week of seven consecutive days. In the event the vacation week

contains a holiday as defined in Article VII, the vacation week shall be extended one additional day.

"5. The amount of the vacation pay shall be one week of forty hours at the employee's straight time hourly rate in effect on the pay day immediately preceding the date fixed as the start of the vacation.

"6. The vacation pay allowance will be paid to eligible employees on the pay day previous to the start of the time assigned for the vacation."

The defendant asserts three grounds for reversal; (1) that the action is barred by ORS 12.120 (3) which requires actions for premium pay to be brought within one year; (2) that defendant's employees accepted the checks given to them on June 28, 1954 in full settlement for all vacation pay, and (3) that the working agreement does not entitle the employees to pay for July 4, 1954, for the reason that they did not work or offer to work on that day or on the last regularly scheduled work day before or after July 4, 1954.

1, 2. We first consider the applicability of ORS 12.120 (3), which provided as follows:

①"(3) An action for overtime or premium pay or for penalties or liquidated damages for failure to pay overtime or premium pay, shall be commenced within one year."

Defendant argues that the vacation with pay is a "premium" given in consideration for length of service. The payment made for such service, it is argued, falls within the commonly understood meaning of "premium" as "giving something extra for some act, accomplishment or conduct not necessarily required in the usual line of duty." The right to a vacation with pay is forthcoming only to those of defendant's em-

---

① This subsection was amended by Oregon Laws 1957, ch 374 and incorporated in ORS 12.110.

ployees who fulfill the contract requirements of continuity of employment and seniority. In a sense, then, the paid vacation is a reward or premium given to those employees who meet these requirements. However, we are here concerned not simply with the broad meaning of the word "premium," but with the meaning of "premium pay." The statute deals with "overtime or premium pay." We regard these terms as descriptive of compensation for a certain type of service in addition to the compensation for the usual service rendered in the employment. Premium pay is compensation for extra services over and above the employee's regular services, as in the case of overtime work or night shift work or other types of services performed under unusual conditions. See, *Bay Ridge Co. v. Aaron,* 334 US 446, 465, 68 SC 1186, 92 L Ed 1502 (1948); Wage and Hour Manual (Cum Ed 1949) WHM 91:1-91:10; Premium Pay Provisions in Selected Union Agreements, Monthly Labor Review, U. S. Dept. Labor, Vol. 65, p. 419. We understand the term to mean a *rate of pay,* i.e., the hourly rate for such extra services, and not a gross sum paid as a bonus or as a general reward for meritorious services. Therefore, we hold that the term "premium pay" as used in ORS 12.120 (3) does not describe vacation pay and the statute does not constitute a limitation on the bringing of the present action.

■ As its second assignment of error defendant asserts that the lower court erred in not holding that the payment made to defendant's employees on June 28, 1954, was in full settlement of their claim for vacation pay for the year 1954. Each employee received a check in an amount which compensated him only for the vacation period and not for the additional day. The appendix to each check indicated that it was for "vacation

pay" and also carried the notation, "Statement of earnings and deductions. Detach before depositing and retain for your record." Defendant argues that the cashing of these checks without complaint or question constituted full settlement of the employees' claims, apparently on the theory of an accord and satisfaction. But there is no evidence that the checks were offered and received in satisfaction of a disputed claim made for additional compensation. Therefore, the evidence to support an accord and satisfaction is lacking.

■ In oral argument defendant relied upon *Kennedy v. Weyerhaeuser Timber Company*, 344 P2d 1025 (Wash 1959) in support of the position that the employees, by accepting vacation pay without demand for the payment of an additional day extended by an intervening holiday, had given a practical construction to the working agreement. The working agreement involved in the Kennedy case was essentially the same as the working agreement before us. The court held that the employer's bookkeeping and payroll records reflected the practice of paying only those employees who qualified for holiday pay under the holiday section of the working agreement, disqualifying an employee for a paid holiday which fell within a vacation period if he did not work on the first regularly scheduled work day after the vacation. We do not know specifically what facts the court relied upon in deriving the practical construction of the contract. Even though we should accept the court's reasoning (which is subject to criticism as the dissent in that case points out), the fact remains that we do not, in the case at bar, have sufficient evidence of the practices of the defendant employer and its employees from which we could conclude that the parties placed upon the working

agreement a construction contrary to the position taken by plaintiffs here. Evidence was introduced by defendant showing that certain employees did not receive holiday pay for a holiday falling within a vacation period, but the defendant failed to show that these employees would have qualified for an additional day's pay under any construction of the contract. We cannot say, therefore, that the parties arrived at a practical construction of the working agreement consistent with defendant's position. In view of this lack of evidence, it is not necessary for us to decide whether the agreement here was the proper subject of practical construction. The dissenting judge in the Kennedy case was of the opinion that a similar working agreement in that case was so clear and unambiguous that resort could not be had to practical construction. We believe that the view of the dissent is correct. However, as we have already indicated, it is not necessary for us to rest our conclusion in the case at bar on this ground.

■ The trial court sustained plaintiffs' objection to the admission into evidence of a copy of a working agreement for the period April 1, 1955 to April 1, 1960. Defendant assigns as error the rejection of this exhibit. The trial court properly excluded the exhibit. The issues in this case arose out of the interpretation of the working agreement in effect in 1954. That working agreement controls the rights and duties of the defendant and its employees for the period within which the July 4, 1954 holiday fell. The subsequent agreement proffered by the defendant covered another distinct contractual period and was not relevant to the issues in this case.

■ The third assignment of error calls for the construction of the provisions of the working agreement

relating to payments for work performed during vacations and holidays. The defendant contends that plaintiffs' assignors did not qualify for payment of compensation for July 4, 1954, because they did not work or offer to work on that day or on the last regularly scheduled work day before and after July 4, 1954 as required by Article VII of the working agreement. In short, defendant relies upon the section of the working agreement relating to holidays. However, in this instance the holiday is also a part of the vacation period.

The question is whether the provisions relating to absenteeism before and after holidays applies where the holiday falls within the vacation period. The answer is to be found in the purpose of the provision. It is designed to discourage employees from extending a holiday and thus disrupting the employer's operations just before or after a holiday. *Bemis Bros. Bag Co.*, 25 Lab Arb Rep 429 (1955); *Bethlehem Steel Co.*, 23 Lab Arb Rep 141 (1954); *Liberty Plating Co.*, 9 Lab Arb Rep 505 (1947). Since the defendant's employees were on a prescribed vacation on the day before and the day after July 4, 1954, the provision would have no application to the absence on those days. The employees' absence on the regularly scheduled work days immediately preceding and following the vacation period would have no relation to a policy of discouraging absenteeism before and after holidays. There is no provision relating to work attendance on the day immediately preceding and the day immediately following a vacation period. The fact that the defendant's employees were on strike the day before and the day after the vacation period is of no significance in the determination of their right to *vacation* pay, because as we interpret the working agreement the work attendance requirement is a condition precedent only to

*holiday* pay. We are of the opinion that the provision on absenteeism in Article VII of the working agreement does not apply to a holiday within a vacation period. Therefore, the plaintiffs' assignors are entitled to holiday pay for July 4, 1954, unless some other provision of the working agreement precludes recovery of holiday pay when the holiday falls within a vacation period.

Defendant contends that the provisions of Article VII-A limit the payment of wages for the vacation period to forty hours at the regular hourly rate. Article VII-A (4) provides that "In the event the vacation period contains a holiday as defined in Article VII, the vacation week shall be extended one additional day." Article VII-A (5) then provides that "The amount of the vacation pay shall be one week of forty hours at the employee's straight time hourly rate * * *." Defendant interprets these provisions to mean that although the vacation period is extended one additional day the employer is not obligated to pay for this additional day because Article VII-A (5) prescribes the vacation pay and that article makes no allowance for payment for the additional day of vacation provided for under Article VII-A (4).

According to defendant's interpretation of the working agreement, an employee would receive pay for a holiday not within a vacation period but would be denied pay for the holiday as such if it fell within a vacation period. The working agreement permits the employer to fix the vacation period. The agreement also provides that employees are entitled to pay for holidays. It is not reasonable to assume that the parties intended that simply by fixing the vacation period to embrace a holiday the employer could deprive its

employees of the holiday pay. We construe Article VII-A (5) not as a limitation of the *period of time* for which the employer will be charged with the payment of vacation pay in all circumstances, but as a *method of computation* which is to be used in arriving at such pay. The method of computation is described in terms of the normal case, i.e., where no holiday falls within the vacation period. Where the vacation period is extended by an additional day as a result of an intervening holiday, it is reasonable to assume that the parties intended that the computation would be adjusted to reflect the additional day. We so construe the working agreement.

The identical facts and issues in the case at bar were presented to the Supreme Court of the state of Washington in *Local Union 9-2521, Etc. v. Aberdeen Plywood Corp.*, 47 Wash2d 636, 289 P2d 206 (1955). The court held that "by agreement of the parties, the holiday lost its identity as such when it came within a *vacation* week." 289 P2d at 208. It was held, therefore, that the absenteeism provision of Article VII relating to holidays was not applicable. The court further held that under Article VII-A, the employees were entitled to pay for the additional day of vacation extended by the intervening holiday. On this point the court said:

"Paragraph 5 of Article VII-A specifies that for a seven-day vacation week, the employee is entitled to forty hours of pay time, and also fixes the rate of vacation pay. The contract (Article VI) contemplates a regular work schedule of 'five eight-hour days commencing on Monday and ending on Friday.' Hence, it follows that it was within the contemplation of the parties that, when the vacation week was extended one day, it then included an additional eight-hour day at the hourly rate of

pay applicable to the eligible employees." 289 P2d at page 208.

We agree with the Washington court's reasoning and conclusion.

The judgment of the lower court is affirmed.