Argued April 3, affirmed April 26, 1973

WALKER, *Appellant, v.* AMERICAN OPTICAL
CORPORATION, *Respondent.*
509 P2d 439

*Max S. Taggart, II,* Springfield, argued the cause for appellant. On the brief were Sanders, Lively & Wiswall, Springfield.

*Hale G. Thompson,* Eugene, argued the cause for respondent. With him on the brief were Thompson, Mumford & Woodrich, Eugene.

TONGUE, J.

This is an action by a former employee against his former employer for payment of a bonus of $2,512.42, alleged to be payable under the terms of a "Sales Incentive Plan." Plaintiff also seeks payment of $1,096.91 as 30 days' wages payable under ORS 652.150 for willful failure to pay that bonus and $1,500 as attorney fees payable under ORS 652.200. Plaintiff appeals from a judgment for defendant. We affirm.

Plaintiff was a salesman employed by defendant. In February 1970 defendant delivered to its salesmen, including plaintiff, a copy of a "Sales Incentive Plan," which was described as "an opportunity to earn additional income by improving your sales performance in 1970." Under the terms of that plan a salesman who exceeded the "incentive quota" assigned to him would be paid a bonus, in addition to his "base salary." The amount of that bonus was to be computed in terms of a percentage of the "base salary," depending upon the percentage of the total sales of a salesman for the year 1970 in relation to his "incentive quota."

The plan also provided as follows:

"Payments will be made semi-annually and is expected to be during October, 1970 (based on the first six months performance) and payable in April, 1971. 40% of any incentives computed for the interim payment will be withheld until the final settlement. * * *

"ADDITIONAL RULES

"1. To receive payment of earned incentive including amounts withheld during the incentive period, a salesman must be on the payroll at the time of distribution."

During 1970 plaintiff exceeded 140% of his sales quota. Under the terms of the plan he was paid a bonus of $948 in October 1970. It was stipulated that if he had continued to work through April 1971, at which time further bonus payments were distributed by defendant to its salesmen, plaintiff would have been entitled to an additional sum of $2,452 as the balance of his bonus for 1970, in addition to his "base salary."

On December 31, 1970, however, plaintiff and defendant "mutually agreed to terminate plaintiff's

employment." What happened was that plaintiff voluntarily decided to leave. Before he did so defendant attempted to persuade him not to do so and told him that if he did so he would not receive the balance of the bonus which would be payable in April 1971 to salesmen then employed by defendant. Plaintiff nevertheless decided to leave on December 31, 1970.

In *Thompson v. Burr*, 260 Or 329, 490 P2d 157 (1971), we held that a written bonus plan offered to employees as "an incentive to stay on the job," under which employees who were on the payroll on December 31st of each year would receive a bonus in the amount of 10% of their gross earnings for the previous year, payable in April of the following year, became binding as a unilateral contract upon acceptance by an employee by staying on the job for the entire calendar year and until the date of his discharge in March of the following year. In that case it appeared that the employee would have "stayed on the job" until April of the following year, but for his discharge, and that the employer did not have "good and sufficient cause" to discharge him. In this case, however, the employee was not discharged, but voluntarily quit his job.

■■ In such a case the bonus plan offered by the employer normally becomes binding as a unilateral contract when the employee begins performance of the terms of the proposed plan, in the sense that the plan cannot then be revoked by the employer. It does not follow, however, that the employee thereupon becomes entitled to the bonus payment. Where, as in this case, the bonus plan specifically provided that the bonus did not become payable until April of 1971 and then only to employees who continued in employment until that time, the employer had no duty under the

facts of this case to pay the bonus to an employee who voluntarily quit his job on December 31, 1970.

This result follows regardless of whether the failure of the employee to stay on the job until April is regarded as a failure to consummate the contract or whether the contract is regarded as having become previously effective and binding upon the employer, but as a contract under which the employer's obligation to pay the bonus was subject to a condition precedent in that such an obligation arose only in the event that the employee was "on the payroll at the time of distribution" in April 1971. See 1 Corbin on Contracts 260-64, §§ 62, 63 (1963); 1A Corbin on Contracts 18, § 153 (1963); 3A Corbin on Contracts 16, § 628 (1960); 5 Williston on Contracts (3d ed 1961) 132-44, §§ 665, 666, 666A; 1 Restatement, 53, 58, 359-61, 365, Contracts §§ 45, 52, 250, 254. See also Annot., 81 ALR2d 1066, 1082 (1962) and *Winkler v. Frank-Cunningham Stores Corp.*, 256 A2d 905 (Ct App DC 1969). But see Note, 70 Harv L Rev 490, 496-97 (1957) and *Montgomery Ward & Company v. Reich,* 131 Colo 407, 282 P2d 1091 (1955).

Plaintiff contends that this bonus plan, "without using the express terms, has a liquidated damage provision that is, in reality, a penalty," as in the case of a contract which is unenforceable because it "embraces a provision whereby performance is rendered more certain by virtue of the requisite payment of monies which are so large as to be out of proportion to the probable loss," as in *Elec. Prod. Corp. v. Ziegler Stores,* 141 Or 117, 10 P2d 910, 15 P2d 1078 (1932), and other cases to the same effect. See also *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972).

■ As stated in 5 Corbin on Contracts 344-45, § 1058 (1964):

"* * * [a]n agent's right to compensation can be made expressly conditional upon the rendition of a specified performance by him. If the performance is not rendered, his right to the compensation never arises. Such a provision is not regarded as one that fixes a penalty for breach of duty; neither is it a provision for liquidated damages. It is not impossible that in an extreme case the court might be convinced that a provision seeming to create a condition precedent to a primary right is put in that form as a camouflage for a penalty clause; but the writer has seen no case of this sort."

■ Neither do we so construe the terms of this bonus plan, as applied to the facts of this case. We also recognize that an employer has a legitimate interest in retaining in his employment employees who, by their ability, training and experience, perform services which are valuable to the employer and that an employer may properly provide reasonable incentives to such employees to remain in his employment.

■ Plaintiff also contends that provisions of this "incentive bonus" plan, under which he was required to be on the payroll in April 1971 to qualify for payment of a bonus for the year 1970, were void as in conflict with ORS 652.120, which provides as follows:

"(1) Every employer shall establish and maintain a regular payday, at which date all employes shall be paid *the wages due and owing to them.*

"(2) Payday shall not extend beyond a period of 35 days from the time that such employes entered upon their work, or from the date of the last regular payday.

"(3) This section does not prevent the employer from establishing and maintaining paydays at more frequent intervals.

"(4) This section does not prevent any employer from entering into a written agreement, prior to the rendering of any services, and mutually satisfactory with his employes, as to the payment of wages at a future date." (Emphasis added)

It is true, as pointed out by plaintiff, that this bonus plan does not qualify under the exception relating to written agreements for deferred payment of wages entered into "prior to the rendering of any services." Nevertheless, the provisions of ORS 652.120 apply only to "wages" which are "due and owing." Payments under this bonus plan may properly be regarded as "wages" in the sense of "compensation" for services provided by an employee to his employer. Nevertheless, such payments were not "due and owing" under the facts of this case, for the reasons previously stated.

For the same reasons, plaintiff is not entitled to payment of $1,096.91 as wages for 30 days and as claimed to be due under the provisions of ORS 652.150 as a civil penalty for willful failure to pay wages or compensation to an employee who quit his employment. See also *State ex rel Nilsen v. Lee,* 251 Or 284, 293, 444 P2d 548 (1968). It also follows, for the same reasons, that plaintiff is not entitled to payment of attorney fees, as claimed to be due under the provisions of ORS 652.200 in actions to collect unpaid wages.

The judgment of the trial court is affirmed.