Argued June 5, affirmed July 5, 1978

## SPRAGUE, *Appellant,*
*v.*
## BROWN, BURT & SWANSON, P.C., *Respondent.*
## (No. 99670, SC 25439)

581 P2d 81

Keith D. Evans, Salem, argued the cause and filed the brief for appellant.

Bruce W. Williams, of Williams, Spooner & Graves, P.C., Salem, argued the cause and filed the brief for respondent.

DENECKE, C. J.

---

Holman, J., did not participate in the decision in this case.

## DENECKE, C. J.

The plaintiff client brought this action against the defendant attorneys seeking damages for an alleged breach of their contract to represent plaintiff. The trial court granted defendant's motion for summary judgment and plaintiff appeals. We affirm.

Plaintiff engaged defendant to represent him in a claim for damages for misrepresentation. A contingent fee contract was executed. The defendant negotiated a settlement which plaintiff approved. The defendant received the settlement funds but would not pay plaintiff immediately. Plaintiff alleges in his complaint that this was done "in an effort to protect another attorney, not a party to the action, who had expressed some claim therein." Plaintiff discharged defendant and engaged another attorney who secured a release of a part of the settlement proceeds to plaintiff.

Plaintiff seeks a reduction in defendant's fee because of the alleged breach of contract, a reduction in the amount withheld by defendant for costs to the amount agreed upon in the contract, five weeks interest for the period during which plaintiff contends the defendant improperly withheld disbursement of the settlement proceeds, and payment of the fee of the attorney engaged by plaintiff to secure the release of the funds.

The trial court sustained the motion for summary judgment because it concluded that after the alleged breach of contract the plaintiff approved the payment of the one-third fee and the amount of costs withheld. The parties refer to this defense as "waiver."

The defendant received the settlement draft some time in September. Plaintiff's former wife had already claimed part of the proceeds, basing her claim upon a property settlement agreement with plaintiff. Defendants in the original lawsuit who paid the settlement demanded a release from the ex-wife before the

proceeds could be disbursed. She would not execute a release. With the participation of plaintiff's new attorney, an arrangement was negotiated to disburse to the plaintiff part of the settlement proceeds. Pursuant to the arrangement three documents were executed October 14, 1976:

(1) A detailed accounting from defendant to plaintiff which stated the gross sum received in settlement, $118,500, the deduction of one-third for the fee, $39,500, the deduction of the costs incurred by defendant, $1,101.03 (with a detailed explanation), one-half of the balance to be paid to plaintiff, $38,949.48, and a like sum to be held in escrow pending a settlement with the former wife or a judgment in any litigation filed by her.

(2) Instructions by defendant to the escrow agent with a check for the amount to be held in escrow pending settlement of the former wife's claim or judgment in any litigation.

(3) A letter to defendant signed by plaintiff reading, in part:

"With reference to any settlement against Sprague and Hurley wherein you have received the gross amount of $118,500.00, and wherein you have left for distribution to me, subject to the claim of my ex-wife, the sum of $77,898.97, it is understood by me that my ex-wife, Esther Sprague, makes claim to one-half of this money based upon a Property Settlement Agreement which she and I heretofore signed. It is my position, however, that she is entitled to no portion of this money by virtue of said Property Settlement Agreement. In view of this dispute between us as to whether or not she has a claim for any of this money, I do hereby consent to one-half of said monies, to-wit: $38,949.50 thereof being placed in escrow with the Pioneer Trust Company of Salem, Oregon, subject to its drawing interest at 5% per annum, and subject further to its being disbursed in accordance with any future settlement that may be arrived at between Esther Sprague and myself, or subject to a final court determination as to whether or not Esther Sprague

[ 8 ]

is entitled to said sum, which, of course, I strongly dispute.

"In consenting to this escrow, I wish to make it very clear that I am in no way admitting that Esther Sprague is entitled to anything, but on the other hand, I am only admitting to this escrow in order that the settlement proceeds can be disbursed as outlined in the accounting letter from Brown, Burt & Swanson dated October 14, 1976."

These are the documents the trial court concluded amounted to a waiver by plaintiff as a matter of law.

We have considered the concept of waiver on many occasions. In *Foster v. Agri-Chem, Inc.,* 235 Or 570, 576-577, 385 P2d 184 (1963), we stated the requirements for the application of waiver:

"The term 'waiver' has been used to cover several classes of legal problems. Both Williston and Corbin term the problem one of 'discharge' rather than 'waiver.' 5 Williston, Contracts (3d ed), 437, § 724; 5 Corbin, Contracts, 984, § 1245. The rule is stated in Corbin, supra, as follows: '* * * a claim for damages for a breach can be discharged by a mere voluntary statement * * *.' As this statement indicates, consideration is not necessary to support such a discharge. However, 'The mere receipt of the defective performance is not in itself sufficient to discharge the claim to damages for the breach. There must be an expression of assent to accept it in satisfaction and as a complete discharge. * * * he must express his assent to accept it as a complete discharge of the obligor's duty to him.' * * *."

Plaintiff's position is that the waiver issue presented questions of fact: whether plaintiff knew of defendant's alleged defective performance of its contract and if so, whether plaintiff intended to accept defendant's performance in satisfaction of its obligation were questions for the trier of fact and not to be decided as a matter of law.

Plaintiff was clearly aware of the allegedly defective performance by defendant. When plaintiff signed the letter of October 14th, he had already discharged

[ 9 ]

defendant because of dissatisfaction with its performance and engaged other counsel.

We are also of the opinion that as a matter of law plaintiff expressed his intent to discharge any claim against defendant for its alleged defective performance.

*Sandblast v. Williams,* 254 Or 395, 460 P2d 1014 (1969), is very close in point on the latter issue. Charles and Frances Williams were purchasing real property on contract. Subsequently they were divorced and Charles transferred his interest to Frances. Frances defaulted and gave the vendors' attorney a deed which was to be delivered to vendors if Frances was unable to pay the contract balance within 60 days. Charles engaged the plaintiff Sandblast, an attorney, to represent him to prevent delivery of the deed to vendees. Sandblast brought a suit against the vendors naming both Charles and Frances as plaintiffs and as owners and husband and wife. The court in that suit ordered the vendors to deliver a deed naming Charles and Frances as vendees. Frances objected to having Charles named, but did not appeal and the deed was so delivered.

When Charles engaged Sandblast as his attorney he agreed to transfer part of the property in controversy to Sandblast as a fee. Frances ratified the fee agreement. Sandblast brought a suit for partition against Frances. On appeal, we held as a matter of law that Frances had waived her claim against Sandblast.

We relied upon the facts that after the deed from the vendors to her and Charles was delivered to Charles and Frances and after she objected to Charles being included in the conveyances, Frances ratified the contingent fee arrangement in writing, executed a deed conveying one-third of her interest to Sandblast and agreed that plaintiff could pay all taxes due on the property and she would reimburse him.

[ 10 ]

We stated:

"* * * When defendant ratified the fee contract, she waived her right to object to its enforcement on the ground that defendant's prior performance was defective because she was at that time fully aware of the nature of these services." 254 Or at 400.

We conclude plaintiff's assent to defendant's one-third fee and the reimbursement of the costs it incurred is clearly stated in the three documents referred to. The essence of plaintiff's intention is expressed in the second paragraph of his letter to defendant quoted above.

Affirmed.