Argued and submitted November 16, 1984, reversed March 6, reconsideration denied
May 24, petition for review denied June 18, 1985 (299 Or 313)
Objections to cost bill allowed, appellants' costs on appeal allowed July 3, 1985
See 74 Or App 253, 702 P2d 78 (1985)

STATE ex rel ROBERTS,
*Respondent,*

*v.*

DUCO-LAM, INC.,
*Appellant.*

(16-82-00636; CA A31489 (Control))


STATE ex rel ROBERTS,
*Respondent,*

*v.*

AMERICAN LAMINATORS, INC.,
*Appellant.*

(16-82-00685; CA A31490)


STATE ex rel ROBERTS,
*Respondent,*

*v.*

ELK RIVER ENTERPRISES,
*Appellant.*

(16-82-00686; CA A31491)
(Cases Consolidated)

696 P2d 561

Denise G. Fjordbeck, Eugene, argued the cause for appellants. With her on the brief were Donald A. Gallagher and Jaqua, Wheatley, Gallagher & Holland, Eugene.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff-relator, the Commissioner, of the Bureau of Labor and Industries (Commissioner) brought these three consolidated assigned wage claim actions against defendants pursuant to ORS ch 652. She seeks penalties and interest on wages withheld from her assignors, former employes of defendants, alleging that such wages were due and payable on termination of their employment. She also seeks interest on the penalties plus costs and disbursements. Defendants assert[1] that the wages were not due until a condition of an agreement entered into with their employes was satisfied and, consequently, that no penalties or interest are justified. The trial judge found for plaintiff. We reverse.

The assignors were employed in 1981 by defendants in different capacities. Faced with depressed market conditions, defendants met with their employes, including assignors, in early 1981 and told them that defendants could not continue to operate and pay current labor costs. As an alternative to ceasing operations, defendants wanted to implement a wage reduction program under which the employes' wages would be cut by 30 percent for approximately two months. The employes were told that the sums withheld would be repaid in the event market conditions improved to the point where profits would allow such a payback. The proposed pay reductions were agreed to. Most of the assignors had terminated employment with defendants by November 23, 1981, and had individually requested the withheld wages on termination.[2]

Assignors assigned their wage claims to the Commissioner; her complaints were filed against defendants in January, 1982. The cases were consolidated for trial and, pursuant to ORCP 66, the controversy was submitted to the trial court for determination on a statement of agreed facts. The trial judge issued a letter opinion holding that (1) the sums withheld by defendants were "due and payable upon termination," (2) the failure to pay the sums on termination was "wilful"

---

[1] Defendant Elk River Enterprises is the sole owner of the stock of the other two defendants.

[2] One of the assignors did not terminate employment until November 15, 1982, and joined the action against defendants at that time.

and plaintiff was therefore entitled to penalties for defendants' failure to pay and (3) plaintiff was entitled to interest on the unpaid wages and interest on the penalties.[3] This appeal followed.

The controlling issue in this case is whether the wages withheld under defendants' wage reduction program were "due and payable" on termination of employment. ORS 652.140.[4] We hold that the trial judge erred in his determination that they were, because an express condition of the agreement between plaintiff's assignors and defendants had not been satisfied at the time of each assignor's termination.

■      Plaintiff argues that ORS 652.360 renders the wage reduction agreements entered into by defendants and their employes illegal. That statute provides:

> "No employer may by special contract or any other means *exempt himself from any provision of or liability or penalty imposed by ORS 652.310 to 652.405 [the wage claim enforcement statutes] or by any statute relating to the payment of wages,* except in so far as the commissioner in writing approves a special contract or other arrangement between an employer and one or more of such employer's employes." (Emphasis supplied.)

The record plainly indicates that the wage reduction agreements were not intended to exempt defendants from "any

---

[3] Only penalties and interest were at issue, because the withheld wages had been paid to all former and current employes by the time of trial.

[4] ORS 652.140 provides in pertinent part:

"(1) Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; provided, that in establishments where perishable or seasonal commodities are processed or handled, when termination of employment results from fluctuation in or cessation of the flow of such perishable or seasonal commodities, such termination shall not be regarded as a discharge or termination by mutual agreement, within the meaning of this section, but all wages earned at the time of such termination shall become due and payable not later than the regular payday on which such wages normally would be paid.

"(2) When any such employe, not having a contract for a definite period, shall quit his employment, all wages earned and unpaid at the time of such quitting shall become due and payable immediately if such employe has given not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of his intention to quit his employment. If such notice is not given, such wages shall be due and payable 48 hours, excluding Saturdays, Sundays and holidays, after such employe has so quit his employment."

provision of or liability or penalty imposed" by either the payment of wages or wage claim enforcement statutes. On the contrary, the agreements were designed mutually to benefit all of the parties involved.

Pursuant to ORCP 66B, under which the parties submitted the issues in this case to the trial court, plaintiff and defendants stipulated to an agreed statement of facts, one of which included the following:

> "In conjunction with the wage reduction program Defendant notified its employees that it would compensate them in the amount by which their wages had been reduced. *An expressed condition to the initiation of the payback program was that lumber market conditions improve to the point to which Defendant would have sufficient profits to compensate employes at the same rate by which their wages had been reduced,* in addition to paying the employees their regular wages." (Emphasis supplied.)

Thus, plaintiff's assignors were to receive the amount by which their wages had been reduced only, *if ever,* when sufficient profits were generated due to improved market conditions. Under this set of facts, and despite the Commissioner's assertions to the contrary, we find the reasoning in *Walker v. American Optical Corp.,* 265 Or 327, 509 P2d 439 (1973), to be directly applicable.

■     In *Walker,* the employer offered its salespersons the opportunity to earn a bonus based on sales exceeding a percentage of their base salary. The plan stipulated that payment of the bonus was subject to a salesperson's being "on the payroll at the time of distribution." The plaintiff became eligible for a bonus, because he exceeded his sales quota, but he voluntarily quit several months before the bonuses were distributed. The plaintiff filed an action to collect his bonus, but the Supreme Court held that "the employer's obligation to pay the bonus was subject to a condition precedent in that such an obligation arose only in the event that the employee" satisfied the terms of the condition, *i.e.,* being on the payroll at the time bonuses were distributed. *Walker v. American Optical Corp., supra,* 265 Or at 333.[5] The analogy between *Walker* and

---

[5] One commentator, in discussing *Walker,* states that when the condition is part of the performance which has been bargained for, it must be fulfilled. 3A Corbin, *Contracts* § 62 (Kaufman supp, 1984). Here, the condition is inextricably tied to the payment of reduced wages.

the present case is obvious. An express condition of the payment of the amount of reduced wages was that "market conditions improve to the point to which Defendant would have sufficient profits to compensate employes at the same rate by which their wages had been reduced." Market conditions had not improved sufficiently to justify repayment until November, 1983, months, and in some instances years, after the Commissioner's assignors had terminated their employment. Because market conditions did not improve until November, 1983, the amount of each employe's reduced wages was due and payable only then, not at the time of termination of each employe.

In view of our analysis of this contract, the provisions of ORS 652.140 do not apply. Payment of the amount by which wages were reduced is controlled by the express condition in the contracts entered into by the parties. For the same reason, plaintiff is not entitled to the amounts claimed as civil penalties under the provisions of ORS 652.150 for wilful failure to pay wages on the termination of plaintiff's assignors. *See Walker v. American Optical Corp., supra.* It also follows that plaintiff is not entitled to the payment of interest under the provisions of ORS 82.010 on either the "unpaid wages" or civil penalties requested in this action.

Reversed.