Argued and submitted September 25, 2003, reversed and remanded for new trial; cross-appeal dismissed as moot August 25, 2004

John A. ERICKSON,
*Respondent - Cross-Appellant,*

*v.*

AMERICAN GOLF CORPORATION,
a foreign corporation,
*Appellant - Cross-Respondent.*

CCV0012263; A118427

96 P3d 843

Gary Roberts argued the cause for appellant - cross-respondent. With him on the brief was Schwabe, Williamson & Wyatt, P.C.

Michael A. Cox argued the cause and filed the briefs for respondent - cross-appellant.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

Plaintiff was employed by defendant American Golf Corporation as general manager of the Oregon Golf Club. After his employment was terminated in 2000, he brought this breach of contract and statutory unpaid wages action, claiming that he had not been paid the full amount of his 1996 and 1999 bonuses. The case was tried to a jury, which returned a verdict for plaintiff. Defendant appeals, arguing that the trial court erred in giving a particular instruction to the jury and in granting a partial directed verdict against defendant's affirmative defenses of accord and satisfaction and waiver. Plaintiff cross-appeals, assigning error to the trial court's refusal to award a statutory penalty based on plaintiff's favorable verdict on the wage claim. *See* ORS 652.150. We reverse on appeal, concluding that the challenged jury instruction was properly given, but that defendant's affirmative defenses were erroneously withdrawn from the jury. Because that disposition requires a new trial, we dismiss the cross-appeal as moot.

■ We state the facts, and all reasonable inferences that they support, in the light most favorable to defendant, the party opposing the directed verdict motion. *Vandermay v. Clayton*, 328 Or 646, 648, 984 P2d 272 (1999). Plaintiff, who had worked as the manager of one of defendant's golf clubs in Texas, transferred to Oregon to manage the Oregon Golf Club after defendant purchased it in 1995. Around the time of plaintiff's transfer to Oregon, defendant instituted a new bonus and profit-sharing plan that contained two components: an annual bonus beginning in 1996 and a three-year long-term bonus to be paid in 1999. For the annual bonus, if a club achieved a certain predetermined proportion of its profit goals, the manager was to receive a "base bonus," which was a percentage of the manager's annual base salary. If the club exceeded its profit goals, the annual bonus was to further include a "threshold bonus," which consisted of a percentage of the club's excess profits, with the percentage increasing progressively as the profits exceeded that club's targets. The amount of the long-term bonus was to be based on an average of the bonuses paid in 1996, 1997, and 1998, which was then subject to a multiplier based on the extent to

which a particular region had reached or exceeded its profit goals.

Each general manager received a document describing the plan in detail. The document identified the formula to be used to calculate the amount of the annual bonus and stated expressly that there was no cap on the potential bonus that a general manager could earn. In addition to that document, each general manager also received a one-page worksheet for calculating his or her individual annual bonus that specified the relevant targets for that manager's property. At the bottom of that worksheet was the statement "[b]onus plan is subject to approval by the executive committee." To receive a bonus at the end of the year, the general managers were required to complete the worksheet and submit it to the executive committee. In past years, individual bonuses were paid only after committee review and approval of each manager's worksheet.

Plaintiff received his worksheet after both the plan document and the formula for plaintiff's annual bonus had been approved by defendant's executive committee. In its first year under plaintiff's management, the Oregon Golf Club substantially exceeded its profit targets. According to the bonus plan and the calculations set forth in plaintiff's worksheet, plaintiff's annual bonus worked out to approximately $128,000, which would have been the largest annual bonus, by a significant margin, ever paid to a general manager by defendant. When plaintiff submitted his worksheet containing the $128,000 figure to Seidl, his regional manager, Seidl told plaintiff that he was concerned that submitting a bonus for that amount "would be a risk in terms of being approved." Seidl suggested that, as an alternative, plaintiff ask for a lower bonus and accept an increase in his base pay for the next year, which would give him a potentially greater future bonus as well. When plaintiff asked Seidl what would happen if he were to submit the $128,000 figure, Seidl responded, "[T]he company's got to do what they got to do." According to Seidl, he meant only that if plaintiff did not submit a lower bonus figure, plaintiff risked having the executive committee reduce it. Plaintiff, however, believed that Seidl was warning him that a request for a $128,000 bonus would place his job at risk.

Although plaintiff continued to believe that he was entitled under the plan to a bonus of $128,000, he signed and submitted a bonus worksheet for a bonus of $81,561. Plaintiff also agreed to a 10 percent increase in salary for the next year, thereby increasing his bonus potential in the future. The executive committee approved the bonus in the amount submitted by plaintiff and paid plaintiff accordingly. Plaintiff also received the 10 percent raise, as agreed, even though the average base pay increase that year for other general managers was three percent. Three years later, plaintiff's long-term bonus was calculated using the $81,561 bonus that plaintiff had accepted, rather than the $128,000 bonus to which plaintiff believed he had been entitled. Plaintiff accepted the resulting long-term bonus amount without protest.

Plaintiff's employment with defendant terminated in September 2000 for reasons unrelated to the present dispute. Plaintiff then brought this action, alleging that, by failing to pay plaintiff the full $128,000 bonus in 1996 and by not using that figure to calculate his long-term bonus in 1999, defendant breached the employment contract with plaintiff and failed to pay plaintiff wages that were due.[1] In addition to the unpaid wages, plaintiff sought a statutory penalty for nonpayment of those wages pursuant to ORS 652.150. In its answer, defendant asserted, among other things, affirmative defenses of accord and satisfaction and waiver. Plaintiff responded by filing a motion for a directed verdict to exclude those defenses at trial, which the trial court granted.

The case was tried to a jury. Plaintiff's principal theory was that he interpreted the disclaimer on the worksheet—"bonus plan is subject to approval by executive committee"—to require only approval of the plan formula, not of the actual payout amount based on that formula. Defendant

---

[1] Plaintiff conceded at oral argument that, although he pleaded the failure to pay wages and the breach of contract as distinct claims, he did not treat the two claims as separate at trial. Similarly, defendant did not distinguish between the claims in its answer. Because our disposition of the case does not implicate any potential differences between the two claims, we do not distinguish between them in this opinion.

countered with its interpretation of the contract: that the disclaimer required executive committee approval of the individual annual bonus payout amounts. The jury returned a verdict for plaintiff. The trial court. awarded damages for breach of contract but declined to assess penalties based on plaintiff's wage claim. This appeal followed.

■ Defendant's first assignment of error raises the issue whether a trial court may properly advise a jury that, if it cannot determine the parties' intent as to ambiguous terms of a contract, the jury should construe the contract against the drafter. In this case, over defendant's objection, the trial court gave the following jury instruction:

> "A breach of contract occurs when a party fails to perform as required by a contract. And in determining the intent of the parties, you may consider the conduct relating to disputed terms of the contract before any controversy arose.
>
> "* * * * *
>
> "The parties have put forward different interpretations of the contract at issue. In interpreting the contract, you are to determine what the parties intended by agreeing to the terms in question.
>
> "To determine intent, you look to the language of the contract and other relevant circumstances. *If the parties' intent can't be determined, the term must be construed against the drafter of the contract. In this case the drafter was the defendant, American Golf Corporation.*"

(Emphasis added.)

On appeal, defendant renews its challenge to that instruction, taking the position that it is never proper for a trial court to give such an instruction to a jury in a breach of contract action. Defendant reasons that, because maxims of construction bear on the *legal* interpretation of a contract and a jury's role is to decide only factual issues regarding the parties' intent, maxims of construction are not "relevant" to the jury's deliberations. Plaintiff, in response, essentially argues that juries properly may be instructed as to the legal principles that bear on the dispute that they must resolve.[2]

---

[2] We reach and resolve defendant's first assignment of error, notwithstanding our disposition of the second assignment of error, because the issue of the

■ We reverse for errors in jury instructions if a given instruction " 'probably created an erroneous impression of the law in the minds of the jurors which affected the outcome of the case.' " *Nolan v. Mt. Bachelor, Inc.*, 317 Or 328, 337, 856 P2d 305 (1993) (quoting *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)); *Stiles v. Freemotion, Inc.*, 185 Or App 393, 395, 59 P3d 548 (2002), *rev den*, 335 Or 504 (2003). We do not agree that an instruction of this kind has that effect. In *Banister Continental Corp. v. NW Pipeline Corp.*, 76 Or App 282, 289, 709 P2d 1103 (1985), *vac'd*, 301 Or 763, 724 P2d 822 (1986) (*Banister I*), we directly addressed the same issue and concluded:

> "Why can a jury not be appropriately instructed as to [a correct] legal rule? It would not be wrong, we think, to tell a jury, in essence, 'You are the judges of the facts. The issue here is the intent of the parties to this ambiguous contract. You are to determine that intent from the evidence that has been received in this case. However, if, after fairly considering all of the evidence, you find that you cannot resolve the ambiguity, then you are to resolve the ambiguity against the party who wrote the contract.' "

We further observed that "there is no reason to keep any useful tool of analysis—like the legal maxim we consider today—from a properly instructed jury." 76 Or App at 290.

■ To be sure, as defendant points outs, our opinion in *Banister I* was vacated by the Supreme Court. *See Banister Continental Corp. v. NW Pipeline Corp.*, 301 Or 763, 724 P2d 822 (1986) (*Banister II*). Contrary to defendant's position, however, that action on the Supreme Court's part does not imply a rejection of our analysis. In its memorandum opinion vacating our opinion, the court expressly declared that it was vacating the opinion "[w]ithout expressing an opinion on the merits * * *." *Banister II*, 301 Or at 764. That disposition left us free to adhere to *Banister I*, as we have done regarding

---

appropriateness of the instruction inevitably will arise on retrial. *See Baker v. Lane County*, 37 Or App 87, 95, 586 P2d 114 (1978) (court considered challenge to instruction where case was being remanded for new trial). The same is not true, however, of the issue raised by the cross-appeal—*i.e.*, whether plaintiff is entitled to a civil penalty under ORS 652.150. Whether that issue will arise depends on the jury's verdict, the outcome of which we cannot forecast, which renders any guidance we might give of uncertain value.

other aspects of our decision in that case.[3] We remain persuaded that our holding in *Banister I* that maxims of construction may be submitted to juries in some circumstances remains correct. We therefore adhere to it. Necessarily, then, defendant's challenge to the instruction fails.[4]

■ We turn to defendant's second assignment of error, which challenges the trial court's grant of plaintiff's motion for a directed verdict against defendant's defense of accord and satisfaction.[5] By granting that motion, the trial court in effect precluded defendant from presenting that affirmative defense to the jury. The trial court made that ruling based on its understanding of ORS 652.360.[6] To put the issue in perspective, we begin by describing the general legal principles

[3] *See, e.g., Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 339, 39 P3d 903, *rev den*, 334 Or 190 (2002) (reaffirming holding in *Banister I* regarding prejudgment interest); *Guinasso v. Pacific First Federal*, 89 Or App 270, 279, 749 P2d 577, *rev den*, 305 Or 672 (1988) (same).

[4] In the alternative, defendant argues that, even if in some circumstances an instruction on maxims of construction is proper, this instruction should have been carefully worded to tell the jury that it should construe a contract against the drafter only as a last resort—*i.e.*, when the parties' intent is impossible to determine from the evidence. In effect, defendant's point is that the particular instruction that the trial court gave was not a correct or complete one. Defendant raises that issue for the first time on appeal, however. Because it is not preserved, we do not consider it. *See* ORAP 5.45(2).

[5] In its answer, defendant raised waiver as an affirmative defense, as well as accord and satisfaction. The answer treated the two defenses as substantively identical. For both, defendant alleged that the bonus obligation was disputed, that defendant offered to pay an $81,000 bonus, and that plaintiff's acceptance of a smaller bonus discharged any duty that defendant might otherwise have had to pay a large bonus. On appeal, neither party distinguishes between the defenses for purposes of the analysis. For that reason, and because any distinctions between it and the defenses of accord and waiver may not be significant in this context, we analyze the issue primarily by reference to the affirmative defense of accord and satisfaction. *See generally Sprague v. Brown, Burt & Swanson, P.C.*, 283 Or 5, 581 P2d 81 (1978) (discussing "waiver" analysis for defective performance of a contract involving the payment of money); *Kahl v. Pool*, 47 Or App 43, 48, 613 P2d 1078 (1980) (waiver analysis applies if a party with a right to receive money under a contract accepts a lesser amount intending to relinquish the right to the full amount due).

[6] We set forth the pertinent text of the statute later in this opinion. 194 Or App at 682. Throughout this opinion, we use the 1995 version of ORS 652.360, the version of the statute that was in effect when the parties negotiated the alleged accord and satisfaction regarding the amount of plaintiff's bonus. Defendant also relies on ORS 652.360(2), which was added to the statute in 2001 and which it asserts applies retroactively. We do not reach that prong of defendant's argument, given our conclusion that the 1995 version of ORS 652.360 did not bar defendant's affirmative defenses in this case.

that bear on the ability of an employer and employee to set the terms of compensation by contract, and we examine particularly the defense of accord and satisfaction as it was raised by employer in this case. We then turn to the express terms of the statute to determine whether they bar such a defense in any claim for unpaid wages.

In general, "[a]n employer is free to set the terms and conditions of the work and of the compensation and the employee may accept or reject those conditions." *State ex rel Roberts v. Public Finance Co.*, 294 Or 713, 716, 662 P2d 330 (1983). Thus, the employment contract itself controls an employee's rights to compensation, including paid vacation, pension benefits, and periodic bonuses. *See, e.g., Sabin v. Willamette-Western Corp.*, 276 Or 1083, 557 P2d 1344 (1976) (paid vacation); *Thompson v. Burr*, 260 Or 329, 490 P2d 157 (1971) (annual bonus); *Rose City Transit v. City of Portland*, 18 Or App 369, 525 P2d 1325 (1974), *aff'd as modified*, 271 Or 588 (1975) (pension benefits). Oregon's wage and hour statutes place some limits on an employer's and employee's ability to freely negotiate all aspects of the employment relationship, including some aspects of compensation. *See, e.g.*, ORS 652.120 (employer must establish regular paydays); ORS 652.110 (employer may pay employee by check only if check is negotiable and payable on demand without discount); ORS 652.220 (employer may not pay a discriminatory wage). When the wage and hour statutes do not specify some particular term, however, the employment contract is the source of the employer's obligations and the employee's rights regarding compensation. *See Roberts*, 294 Or at 716-18.

Under conventional contracting principles, if parties dispute their rights under a contract in good faith, they may resolve that dispute through accord and satisfaction. Accord and satisfaction is the substitution and execution of a new agreement in satisfaction of the former one. *Warrenton Lumber Co. v. Smith et al.*, 117 Or 530, 539, 245 P 313 (1926); *Williams v. Leatham*, 55 Or App 204, 207, 637 P2d 1296 (1981), *rev den*, 292 Or 581 (1982). In the creditor/debtor context, an accord and satisfaction results when a debt is unliquidated or disputed in good faith, the debtor offers a sum on the condition that it be received as full payment, and the creditor accepts it. *Kilander v. Blickle Co.*, 280 Or 425, 428,

571 P2d 503 (1977). In the context of an employment con-
tract, if the prerequisites for an accord and satisfaction are
met, a substitute agreement may be used to resolve good
faith disputes between an employer and employee over the
amount of commissions, overtime, salary, or other compen-
sation. *See, e.g.*, *Massey et al v. Ore.-Wash. Plywood Co.*, 223
Or 139, 353 P2d 1039 (1960) (vacation pay); *Lenchitsky v.
H.J. Sandberg Co.*, 217 Or 483, 488-90, 343 P2d 543 (1959)
(commissions on sales); *Shelley v. Portland Tug & Barge Co.*,
158 Or 377, 76 P2d 477 (1938) (overtime and subsistence);
*Fogdall v. Lewis and Clark*, 38 Or App 541, 590 P2d 775
(1979) (annual salary). Because accord and satisfaction is an
affirmative defense, the burden of establishing it is on the
party raising the defense. If the defense is established, the
parties' rights are determined under the new agreement, for
the "original obligation is totally extinguished." *Savelich
Logging v. Preston Mill Co.*, 265 Or 456, 462, 509 P2d 1179
(1973).

In this case, as defendant asserts and we agree, the
record is adequate to support submitting the affirmative
defense of accord and satisfaction to a jury.[7] Taking the facts
in the light most favorable to defendant, the evidence would
permit a jury to find that plaintiff and defendant had a good
faith dispute over plaintiff's contractual entitlement to a
bonus of $128,000. Plaintiff thought that the amount was
contractually guaranteed and was not subject to being
reduced by the executive committee. Defendant's position, on
the other hand, was that the executive committee approved
only the general plan and each manager's individual work-
sheet at the start of the year, and that the actual bonus to be
paid was subject to executive committee review and adjust-
ment at the end of the year. Faced with that good faith dis-
pute, plaintiff and defendant entered into a substitute agree-
ment to resolve it. Before plaintiff submitted the necessary
paperwork to request the bonus, and before the executive
committee received or reviewed plaintiff's request, plaintiff
agreed with Seidl to request a smaller bonus than he believed
he was entitled to receive. In exchange, plaintiff was to

---

[7] Plaintiff does not argue to the contrary. Plaintiff asserts only that the ade-
quacy of the factual support for the affirmative defenses "misses the point here."

receive a larger salary increase than he otherwise would have, which had the effect of potentially increasing his bonus in future years as well. The substitute agreement was then executed. Consistently with it, plaintiff submitted the paperwork for a smaller bonus ($81,561). The executive committee approved that bonus and paid plaintiff, and he accepted the payment. Plaintiff also received a 10 percent base salary increase for the next year. In 1999, plaintiff's long-term bonus was calculated using the 1996 bonus amount, and he accepted the amount of that bonus without protest.

As noted, however, the trial court agreed with plaintiff that ORS 652.360 bars such a defense in an action for unpaid wages, regardless of whether the evidence is otherwise sufficient to support it. As pertinent to this case, that statute provides:

> "No employer may by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 or by *any statute relating to the payment of wages*, except insofar as the commissioner [of the Bureau of Labor and Industries] in writing approves a special contract or other arrangement between an employer and one or more of such employer's employees."

ORS 652.360 (emphasis added). The trial court agreed with plaintiff that an employer is exempted from a "statute relating to the payment of wages" when the employer and employee resolve a good faith dispute over compensation owed under an employment contract by reaching a substitute agreement. Here, the alleged accord and satisfaction did not have the commissioner's approval. Consequently, the trial court granted plaintiff's motion for a directed verdict against defendant's affirmative defenses, thus precluding defendant from presenting them to the jury.

On appeal, the parties renew the arguments they made below. In challenging the trial court's ruling, defendant argues that, when plaintiff agreed with Seidl to submit the bonus worksheet for a smaller bonus, nothing in that new agreement purported to exempt defendant from "any provision of or liability or penalty imposed by" any wage payment statute. Defendant asserts that, for example, it did not

require plaintiff to sign an agreement to release it from any wage claim, forgo a civil penalty that might be due for unpaid wages, or change the date on which compensation was statutorily due. In response, plaintiff asserts that "Oregon law could not be more clear that waiver or estoppel cannot be raised as defenses to wage claims." Plaintiff does not identify any particular wage payment statute that he believes the substituted agreement violated. Instead, plaintiff relies on case law that he understands to prevent an employer and employee from resolving a dispute over compensation through accord and satisfaction or waiver.

In interpreting the meaning of the statute, the starting point is its text. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). By its terms, ORS 652.360 prevents an employer, by special contract or other means, from exempting itself from "ORS 652.310 to 652.414 or * * * any statute relating to the payment of wages." In that regard, the statute means what it plainly says: it prevents an employer from exempting itself from "any" statute that relates to an employer's payment of wages. *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 468-69, 988 P2d 384 (1999). The converse is necessarily implicit in the statute as well—if an agreement between an employee and employer does not effectively exempt the employer from any liability or any penalty imposed by a statute relating to the payment of wages, ORS 652.360 is inapposite.

Our cases illustrate the distinction. In *Kling v. Exxon Corp.*, 74 Or App 399, 703 P2d 1021 (1985), the plaintiff was terminated by his employer. Under ORS 652.140, the employer was obligated to pay the plaintiff all wages due on the date of termination. The parties agreed, however, that, instead of invoking formal termination procedures, the employer would give the plaintiff additional severance pay in the form of two weeks' salary and a week of paid vacation that the plaintiff was not otherwise entitled to receive. According to the employer, the parties agreed that the earned wages owed on the date of termination, together with the negotiated severance pay, would be paid to the plaintiff on the next two regular paydays, which were approximately one and two weeks after the date of the termination. Although the employer paid the plaintiff as promised, the plaintiff

brought an action for unpaid wages and a statutory civil penalty based on the employer's failure to pay the earned wages on the date of termination. In response, the employer argued that the plaintiff had waived his right to immediate payment of those wages and should be estopped from asserting his right to them under ORS 652.140. We rejected the employer's argument, reasoning that ORS 652.360 prevents an employee from waiving his rights under ORS 652.140 to payment within the statutorily specified time. *Kling*, 74 Or App at 403.[8] *See also Garvin v. Timber Cutters, Inc.*, 61 Or App 497, 658 P2d 1164 (1983) (ORS 652.360 barred employment contract that waived employee's right under the wage and hour statutes to have only certain deductions taken from paychecks); *Schulstad v. Hudson Oil Company, Inc.*, 55 Or App 323, 327-28, 637 P2d 1334 (1981), *rev den*, 292 Or 825 (1982) (same).

We reached the opposite result in *State ex rel Roberts v. Duco-Lam, Inc.*, 72 Or App 473, 696 P2d 561, *rev den*, 299 Or 313 (1985). There, to avoid suspending operations during depressed market conditions, the employer proposed to reduce employee wages for a two-month period. If market conditions then improved, and operations were sufficiently profitable, the employer agreed to repay the lost wages to the employees. The employees accepted the employer's proposal and continued working. When some of the employees later terminated their employment, they brought an action for unpaid wages, claiming that ORS 652.360 rendered the wage reduction agreements illegal. On appeal, this court rejected their argument, reasoning that the wage reduction agreements did not "exempt [the employer] from 'any provision of or liability or penalty imposed' by either the payment of wages or wage claim enforcement statutes. On the contrary,

---

[8] Significantly, however, we further observed:

"There is no evidence that [the employer] intended its payments to 'satisfy its wage-claim obligations' or that plaintiff accepted the payments with that understanding. On the contrary, those payments were the result of a separate agreement to pay money in lieu of a termination notice."

*Kling*, 74 Or App at 403. Thus, *Kling* appeared to reserve the question whether the analysis would be different if the parties had entered into an actual accord and satisfaction of their dispute. We need not revisit that issue given our conclusion that the new agreement in this case, unlike the new agreement in *Kling*, did not waive any employee right or employer obligation under the wage payment statutes.

the agreements were designed mutually to benefit all of the parties involved." *Id.* at 476-77. In other words, although the employer and the employees renegotiated the amount of wages owed under their original contract, the employees waived no statutory rights and the employer avoided no statutory obligations in doing so. Thus, ORS 652.360 did not bar enforcement of the terms of the renegotiated contract.

As that description of *Kling* and *Duco-Lam* reveals, and contrary to plaintiff's assertion, our cases do not stand for the proposition that affirmative defenses such as accord and satisfaction, waiver, and estoppel are categorically barred by ORS 652.360 in an action for unpaid wages. Rather, the statute bars an employer's reliance on a substituted or otherwise renegotiated employment agreement only when enforcement of the agreement would have the effect of exempting an employer from a specific statutory provision regarding the payment of wages. *See Kling*, 74 Or App at 402; *Garvin*, 61 Or App at 501-02; *Schulstad*, 55 Or App at 327-28. If the renegotiated or substituted agreement alters the substantive rights of the parties without impairing any statutory right or obligation arising under the specific provisions of the wage payment statutes, ORS 652.360 does not preclude the employer's reliance on the renegotiated or substituted terms. *Duco-Lam*, 72 Or App at 476-77.[9]

The pivotal question in this case thus reduces to whether the contract right that plaintiff arguably renegotiated or waived—the right to be paid the bonus due under the

---

[9] Plaintiff also relies on *Vento v. Versatile Logic Systems Corp.*, 167 Or App 272, 3 P3d 176 (2000). That case, however, provides no guidance here. In *Vento*, the plaintiff was fired from her job. She asserted an entitlement to certain overtime wages, which her employer disputed. The employer paid her what it agreed was due, but did not pay the disputed wages. Later, when the plaintiff brought an action for unpaid wages and penalty wages, the plaintiff and the employer settled the claim via an agreement that purported to release the employer from all claims in connection with the dispute. On appeal, the parties proceeded on the assumption that the agreement was illegal under ORS 652.360. *See Vento*, 167 Or App at 275. The only issue presented for our resolution, and the only issue that we resolved authoritatively, was whether the employer's failure to pay so-called "penalty wages," which the settlement amount did not cover, was "willful" within the meaning of ORS 652.150, the statute imposing the obligation on the employer to pay a civil penalty. *Id.* at 279. In all events, *Vento* involved a purported settlement of a claim arising under a specific statutory provision after that claim had accrued. As we discuss later in this opinion, plaintiff identifies no such claim in this case.

original employment contract—was secured or protected by any "statute relating to the payment of wages." Plaintiff identifies no statutory right or obligation that the substituted agreement impaired, and our own examination of the wage payment statutes does not reveal one. No statute provides that an employer must pay an employee an annual bonus of a particular amount; the right to a bonus and the amount of the bonus are terms and conditions of the employment contract that are left wholly to negotiation between the parties. Nor is there any statutory provision that prevents parties to an employment contract from renegotiating the terms of their contract more generally; parties may do so consistently with traditional contracting principles as long as the agreement does not effectively exempt the employer from the obligations and liabilities imposed under the wage payment statutes. ORS 652.360; *Duco-Lam*, 72 Or App at 476-77.

Finally, this is not a case in which the alleged accord and satisfaction exempted or sought to exempt employer from any liability or obligation that had accrued under the wage payment statutes. This case therefore is distinguishable from *Kling*. There, the employer failed to comply with its specific obligation under ORS 652.140 to pay earned wages on the date of the employee's termination. The employee's agreement to a later payment date waived not only his fixed right to a payment at the time specified by ORS 652.140, but also his right to a civil penalty for that late payment under ORS 652.150, which accrued when the employer did not make the timely payment. *Kling*, 74 Or App at 401-03. Here, in contrast, plaintiff did not have an accrued wage claim or a right to a civil penalty for unpaid wages at the point that he submitted a request for a smaller bonus and accepted payment in the amount that he requested. *A fortiori*, the alleged accord and satisfaction neither waived any then-existing right that plaintiff had under the wage payment statutes nor exempted employer from any then-existing obligation under those statutes.

The closest that plaintiff comes to identifying a specific statute that was violated by the substituted contract is to cite, summarily and for the first time on appeal, ORS 652.160, which provides:

"In case of dispute over wages, the employer must pay, without condition, and within the time set by ORS 652.140, all wages conceded by the employer to be due, leaving the employee all remedies the employee might otherwise have or be entitled to as to any balance the employee might claim."

Plaintiff does not explain his reliance on that statute or otherwise develop his argument. Presumably, plaintiff's theory is that, in paying plaintiff the 1996 and 1999 bonuses, defendant paid plaintiff all wages that the employer conceded were due, but conditioned the payment on plaintiff's agreement to accept a smaller bonus as a way of resolving their dispute, which effected a "waiver" of the balance.

The problem with plaintiff's reliance on that statute is that the amount of the bonus due and owing in this case *was* disputed. Plaintiff's position was that a bonus in the amount of $128,000 was contractually owed; defendant's position was that the contract reserved to the executive committee the right to adjust the actual amount of the bonus to be paid as a discretionary matter. Viewed in the light most favorable to defendant, the evidence shows that, by agreeing to pay plaintiff a bonus of $81,561 and to give plaintiff a special prospective salary increase, defendant was not paying plaintiff wages that defendant *conceded* were owed. Nor was defendant conditioning the payment of *concededly* owed wages on a waiver of plaintiff's remedies for the disputed amount. Instead, on this record, a jury could find that defendant was agreeing to pay *disputed* wages and also to give plaintiff a special salary increase, in exchange for a binding resolution of their dispute about the amount of the bonus owed. The statute has no application to such an agreement.[10]

---

[10] Although plaintiff does not articulate it, his theory may be that the accord and satisfaction violated ORS 652.160 because, by renegotiating his *substantive* right to a bonus of $128,000 (assuming his understanding of the original contract was correct), plaintiff could not succeed on an action for unpaid wages based on the original contract. But nothing in the wage payment laws guarantees an employee a right to an action on an original employment contract. Beyond that, as already discussed, plaintiff identifies no specific provision of or liability or penalty imposed by the wage payment statutes that the substituted agreement violated. To interpret ORS 652.360 to mean that an employee is somehow guaranteed a right to pursue an action on the original terms of a contract would mean that an employee and employer could never renegotiate the terms of the original agreement, either prospectively, as in *Duco Lam*, or to resolve a good faith dispute. We reject that interpretation.

In sum, plaintiff's submission of a bonus request for $81,561 in 1996, and his acceptance of the payment for his long-term bonus in 1999 that was calculated using the 1996 bonus, may have waived a *contract* right secured by the original employment agreement, depending on how a jury resolves the factual disputes as to the original agreement's terms and the alleged accord and satisfaction. But plaintiff did not waive any *statutory* right in requesting the smaller bonus, and employer was not exempted from any "provision of or liability or penalty imposed * * * by any statute relating to the payment of wages" in violation of ORS 652.360. Thus, the affirmative defenses of accord and satisfaction and waiver should not have been withdrawn from the jury. Because the jury was prevented from considering defendant's contention that plaintiff accepted a smaller bonus in 1996, and a larger base salary increase, to resolve a good faith dispute over the terms of the original bonus plan, the case must be remanded for a new trial. *See Kilander*, 280 Or at 429-30 (although jury found that the initial agreement was as claimed by the plaintiff, failure to permit the jury to resolve that question in light of the evidence of an accord and satisfaction was prejudicial and required a new trial).

Reversed and remanded for new trial; cross-appeal dismissed as moot.